ANDREW NOVOCK v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Practice—Exceptions to charge to jury—Negligence.*

1. It is improper for counsel to interrupt the judge while charging a jury, and hold a discussion with him on the law and facts, and such conduct should not be allowed.

2. Plaintiff was employed by defendant on its gravel train, which had been backed in on a side track to the gravel pit for the purpose of loading, and, being obliged to wait for an express train, plaintiff and his companions left the cars, and went on the adjoining bank, which was higher than the level of the cars. The boarding cars had been left on the main track, a few rods distant, to be attached when the gravel cars were loaded. While thus waiting, the gang foreman, as the engine backed in

to take out the cars, called out, "All aboard !". Plaintiff did not hear this order; but, seeing the other men starting for the cars, followed them, and as the train was moving out jumped from the bank onto a car, and, the gravel slipping under him, he fell off, and his arm was crushed under the wheels. The men had *general* orders not to board *moving* cars. Plaintiff sued defendant for the injury sustained.

*Held*, that the case should have been taken from the jury, it being clear that plaintiff acted as he saw others act, and paid no heed to the *risk* that was *patent* to everybody.

*Held*, further, that the language used by the foreman was the same sort of warning generally given when cars are about leaving, and was no more than notice of that fact, and was no more proof of negligence than if given when a passenger train is about leaving the station, which would justify no one in boarding or leaving cars in motion.[1]

Error to Wayne. (Jennison, J.) Argued June 24, 1886. Decided October 14, 1886.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Henry Russel,* for appellant:

Where a person, by the exercise of ordinary care, might have avoided a danger, and fails to do so, he is guilty of such negligence as will bar a recovery: *Williams v. Michigan Cent. R. R. Co.,* 2 Mich. 259; *Lake Shore & M. S. R. R. Co. v. Miller,* 25 Id. 274; *Michigan Cent. R. R. Co. v. Campau,* 35 Id. 468; *Le Baron v. Joslin,* 41 Id. 313; *Billings v. Breinig,* 45 Id. 65; Cooley, Torts, 674.

It is the duty of a servant to obey all lawful orders. But when ordered into a situation of danger, and the risk is perfectly obvious, the responsibility is upon him either to decline to obey the order, or to assume the risk: 2 Thomp. Neg. 975; *Cassidy v. Maine Cent. R. R. Co.,* 76 Me. 488; *Keegan v. Kavanaugh,* 62 Mo. 232; *Union Pac. R. R. Co. v. Fort,* 17 Wall. 558; *Chicago & N. W. Ry. Co. v. Bayfield,* 37 Mich. 205; *Rodman v. M. C. R. R. Co.,* 55 Id. 57; Cooley, Torts, 555.

The liability of the company is conditioned upon the exercise of reasonable and proper care and caution on his

---

[1] See *Blair v. Grand Rapids & Ind. R. R. Co.,* 60 Mich. 125 (head-note 3).

part: *Balt. & Potomac R. R. Co. v. Jones,* 95 U. S. 439.

The foreman, himself a subordinate of the conductor in charge of the train, is a fellow-servant with the men of his gang: Wood, Master & Serv. §§ 436, 437; Whart. Neg. § 229; Cooley, Torts, 544, 545, 562; *Quincy Mining Co. v. Kitts,* 42 Mich. 34; *Keystone Bridge Co. v. Newberry,* 96 Penn. St. 246; *Zeigler v. Day,* 123 Mass. 152; *Curran v. Merchants' Mfg. Co.,* 130 Id. 374; *McGowan v. St. Louis & I. M. R. R. Co.,* 61 Mo. 528; *Marshall v. Schricker,* 63 Id. 308; *Lawler v. Androscoggin R. R. Co.,* 62 Me. 463; *Doughty v. Penobscot Log Driving Co.,* 76 Id. 143; *Peterson v. Whitebreast C. & M. Co.,* 50 Ia. 673; *O'Connell v. Baltimore & O. R. R. Co.,* 20 Md. 212; *Cumberland C. & I. Co. v. Scally,* 27 Id. 589; *Peschel v. Chicago, M. & St. Paul Ry. Co.,* 62 Wis. 338; *Chicago & A. R. R. Co. v. Murphy,* 53 Ill. 336.


*Ervin Palmer,* for plaintiff:

Plaintiff assumed the ordinary risk of his employment, but only that necessarily incident to his employment: *Chicago & N. W. Ry. Co. v. Bayfield,* 37 Mich. 205, 213; *Quincy Mining Co. v. Kitts,* 42 Id. 34, 39, 40.

"The master may be negligent in commanding the servant to go into exceptionally dangerous places, or to submit himself to risks which, though he may be aware of danger, are not such as he had reason to expect or consider as being within the employment:" Cooley, Torts, 555 *et seq.; Lalor v. Chicago, B. & Q. R. R. Co.,* 52 Ill. 401; *Swoboda v. Ward,* 40 Mich. 420, 423, 424; *Hathaway v. Michigan Cent. R. R. Co.,* 51 Id. 257; *Chicago & N. W. Ry. Co. v. Bayfield,* 37 Id. 205, 209, 210; *Rodman v. M. C. R. R. Co.,* 55 Id. 63; *Louisville & N. R. R. Co. v. Bowler,* 9 Heisk. (Tenn.) 866, 871.

A master is liable for injuries caused by the negligence of a fellow-servant, when such fellow-servant is empowered with superior authority and may direct the inferior: *Cowles v. Richmond, etc., D. R. R. Co.,* 84 N. C. 309–312; *Lake Shore & M. S. Ry. Co. v. Lavalley,* 36 Ohio St. 221–226; *Gravelle v. Minneapolis & St. L. R. R. Co.,* 3 McCrary, 352–357; *Louisville, C. & L. R. R. Co. v. Cavens,* 9 Bush (Ky.), 561–565; *Chicago & N. W. Ry. Co. v. Moranda,* 93 Ill. 302–309; *Lalor v. C. B. & Q. R. R. Co.,* 52 Id. 401–404; Wood, Mast. & Serv. §§ 438, 439, 450; Cooley, Torts, 555, 561, 563, and cases cited; *Chicago & N. W. Ry. Co. v. Bayfield,* 37 Mich. 213; *Rodman v. M. C. R. R. Co.,* 55 Id.

62; *Quincy Mining Co. v. Kitts*, 42 Id. 39. 40; *Chicago, M. & St. P. Ry. Co. v. Ross*, 112 U. S. 377–390; *Louisville & N. R. R. Co. v. Bowler*, 9 Heisk. (Tenn.) 866, 871.

Plaintiff could not recover if, by his own negligence, he contributed to the injury sustained. This was a question of fact for the jury: *Chicago & N. E. Ry. Co. v. Miller*, 46 Mich. 532, 538, 539; *Lewis v. Flint & P. M. Ry. Co.*, 54 Id. 55, and cases cited; *Swoboda v. Ward*, 40 Id. 420–424; *Marcott v. Marquette, H. & O. R. R. Co.*, 47 Id. 1.

"It is perfectly just, under such circumstances, to leave upon the master the responsibility he assumed in giving an unwarranted order, and to hold that the servant is not blamable in yielding obedience to his superior:" *Chicago & N. W. Ry. Co. v. Bayfield*, 37 Mich. 210, 211; *Rodman v. M. C. R. R. Co.*, 55 Id. 63.

CAMPBELL, C. J. Plaintiff sued and recovered below for injuries caused by a fall from a gravel car near Charlotte, Eaton county, on a railroad operated by defendant. The accident happened on July 11, 1885. Plaintiff was one of a gang of laborers engaged in digging gravel in a bank a few rods from the main track. There was a side track run in by the place where they were digging, and the cars were loaded, and then taken out, each man having his place upon one of the cars, from which it was shoveled off by the same set of men at such places as required it. The cars were the usual flat cars generally used for such purposes.

On Saturday afternoon, July 11, 1885, a train of eighteen cars had been backed in at the gravel bank, three boarding cars and a way car having been detached and left on the main track by the engine that was to draw out the loaded gravel cars, which were to be attached again to the boarding cars when hauled out, and then the train was to go to Jackson, it being the last load for the day. When the gravel cars were loaded, it was necessary to wait about half an hour for the express train, and the men, instead of waiting on the cars, went out upon the bank to be in the shade, and remained there until ready to start. The ground where

they were was a little higher in most places at the cut than the level of the cars, and the edge, as sworn to by plaintiff, was about a yard away from the car decks. According to plaintiff's witnesses, but not himself, as he did not hear it, Frank Soper, the gang foreman, as the engine backed in, called out, "All aboard!" The men, who were some 80 or 100 feet off, walked down, and when they reached the edge of the bank the train was moving. According to plaintiff's witnesses, they, or most of them, jumped on the cars as they were passing, and plaintiff, not being able to get on his own car, jumped on another, and, the gravel slipping under him, he fell off, and his arm was crushed under the wheels. At this time the boarding cars, which he knew were to be annexed, stood off on the main track from 4 to 6 rods away.

Plaintiff had been working some two weeks in the same gang, and understood the arrangement of the train. He swears that he heard no order to board the train where it was, but went because he saw the other men do so. The men had general orders not to board cars in motion.

The only negligence pointed out by plaintiff's counsel in this Court was the order by Soper to board the cars, which it is claimed relieved plaintiff of any responsibility for looking after his own safety in getting on by jumping as he did.

It is very doubtful whether the court below meant to leave this question to the jury. The charge as given did not confine the jury to this ground of negligence, but seemed to leave them at liberty to consider other matters. The declaration set out the fashion of the cars as improper, and various other charges were made,—of undue speed, and a failure to furnish a proper place to board the cars. None of these questions arose upon any evidence before the jury, as there was nothing to authorize any inference of negligence from any of them, and it is not now claimed.

We are strongly inclined to think the judge meant the jury to understand that plaintiff had no right to jump on the cars in motion, for such was the general tenor of his remarks. But, in answer to a complaint from plaintiff's counsel, he remarked, concerning a claim that this Court had held differently:

"They said you had a right to obey all legal orders; but if a man was ordered to jump off a train going at the rate of 40 miles an hour, more or less, I suppose he would not have to obey. If the superintendent had ordered the plaintiff to kill himself, he should not do it. He had no right to obey all wrongful orders. He had a right to obey all legal orders."

This practically deprived the jury of any definite instruction on the subject, and left them to determine for themselves what orders should be obeyed. The court also charged the jury upon the assumption that some special order had been given plaintiff to get on, and that what was said amounted to a definite order. Some of the confusion evidently arose from the fact that counsel, during the charge, interrupted the judge, and held a discussion with him upon the law and facts, which was not proper, and should not be allowed, as it not only breaks in on the province of the court, but is almost certain to befog the jury. The proprieties of a trial should not be interfered with in this way.

But the court left it to the jury to pass upon other questions of negligence, which it was clearly erroneous to do, as there was no testimony tending to show it.

The defendant's counsel asked several charges; one that plaintiff could not recover because he had made out no cause of action, and others more specifically pointing out legal questions, which the court was asked to pass upon. These included, among others, contributory negligence, the voluntary assumption of the risk, the manifest character of it, and the known opportunity to board the cars in another

way if he chose to do so. All of these specific requests were denied, and they were not substantially given in the charge, although the judge probably assumed they would be considered by the jury if necessary. Their attention was not called in any way to the fact that plaintiff did not act upon any order brought to his knowledge, and it was not called to the fact that he knew the train was to be made up on the main track before they left for Jackson, so that there would be a safe opportunity to get on board while it was stationary.

In our opinion, the case should not have gone to the jury. The only question presented was whether plaintiff acted in obedience to such an order as would have justified . him in assuming a plain and manifest risk to life and limb. It seems to us that the case presents no such dilemma.

He distinctly swears he heard no order whatever, and went because the others went. He does not swear, and the circumstances show it was not true, that he supposed it was his absolute duty to do as he did, or that he would be left behind or incur any blame or risk if he did not. He knew that the boarding cars were to be taken up, and were not far off. From his own statement, it is clear that he simply acted as he saw others act, and paid no heed to the risk that was patent to everybody. There was a reason of convenience given, that it was easier to jump on the cars from an elevation than to get upon them otherwise, which may have led to what was done by the men, but which would not make their conduct less reckless. The fact that other people run risks is no excuse. *Mich. Cent. R. R. Co. v. Coleman*, 28 Mich. 440 ; *Lake Shore & M. S. Ry. Co. v. Bangs*, 47 Id. 470; *Piquegno v. Chicago & G. T. Ry. Co.*, 52 Id. 40; *Flint & P. M. Ry. Co. v. Stark*, 38 Id. 714; *Downey v. Hendrie*, 46 Id. 498; *Mitchell v. Chicago & G. T. Ry. Co.*, 51 Id. 236.

The present case resembles that cited in 52 Mich. in another point of view. There, as here, it was shown that the conductor called the hands (in that case to supper), and that was set up in excuse for the plaintiff's carelessness in getting off. But it was held there was nothing in the shape of a command calling for obedience at personal risk. The only language which any one mentions as used by Soper was the same sort of warning which is given generally when cars are about leaving, and was no more than notice of that fact. It was no more proof of negligence than such a notice would be as given when a passenger train is about leaving, which would justify no one in boarding or leaving cars in motion.

The judgment should be reversed, with costs.

The other Justices concurred.