CATHERINE KENNEY *vs.* HINGHAM CORDAGE COMPANY.

Suffolk.      January 14, 1897. — May 19, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Master and Servant — Assumption of Obvious Risk.*

At the trial of an action for personal injuries received by the plaintiff while in the employ of the defendant, in consequence of having his clothing caught in a pulley and belt on a machine by which he was standing while working on another machine, there was evidence that, when injured, the plaintiff, who was an adult, had been employed for about two months as a spinner in the defendant's cordage factory, previous to which for four years he had been so employed, on machines of substantially similar character and operation, in another cordage factory; that, when injured, he was standing in a narrow passage between two machines, from one of which he was removing a bobbin; and that, before he had begun to work for the defendant, he had questioned the safety of this passage, but was assured by the defendant's superintendent of the safety both of the passage and of the machinery. The plaintiff testified that he worked every working day on the same machine by which he was injured during the whole period of his employment; that he knew the belt was there; that he had

seen it and the pulley ; that when he stepped into the passage he knew that the machine behind him was running; and that there was nothing about the belt and the pulleys which he could not have seen had he looked. *Held,* that the plaintiff assumed an obvious risk, and that the action could not be maintained.

In determining whether the risks of an employment are so obvious as to be assumed by an employee, the question is not whether the employee has actually observed, and by a conscious act of the will assumed, all of the risks involved, but whether such risks are incident to and naturally grow out of the employment in which he is engaged, and are such as, having regard to the age, intelligence, and experience of the employee, he could have seen and understood had he looked for them, and such as, having seen, he must have appreciated.

TORT, for personal injuries received by the plaintiff on October 10, 1894, while in the employ of the defendant. The declaration was under the employers' liability act, St. 1887, c. 270. Trial in the Superior Court, before *Mason,* C. J., who allowed a bill of exceptions, which, so far as material, is as follows.

The plaintiff when injured was twenty-five years of age, and had been employed by the defendant as a spinner since the 12th of the preceding August, and previous to that time she had for four years been similarly employed by the Suffolk Cordage Company in Chelsea, and had there worked on machines which, though differing in some respects from those of the defendant, resembled them in their general character and operation. At the time of the accident, the plaintiff, while engaged in taking a bobbin out of the machine on which she worked, was standing in a passageway between that machine and another, the width of which was variously stated as from ten to twenty-two inches. While so standing there her dress was caught by a rapidly revolving cross belt and drawn into the machine behind her, and she received the injuries complained of. Before she began to work for the defendant she observed the narrowness of the space between the machines, and asked the defendant's superintendent " if the passage was not too narrow between the two machines; he said, No, he did not think it was. And I asked him if there was not any danger in it, and he said, Not at all, that they were as safe as the machinery in Chelsea was." The plaintiff also asked the defendant's superintendent " if the belt was not dangerous in there," to which he replied that there was " no danger whatever, that it was perfectly safe." The plaintiff testified as follows : " I worked on the same machine I was hurt

on every working day, from August 15 till I was hurt, . . . had seen the belt and pulley; such belts and pulleys were on all the machines there. . . . I knew the belt was there, had been between those machines every working day from the 15th of August to the 10th of October; . . . nothing different that day from any other; knew the machine was running behind me when I stepped in; . . . there was nothing about the belt and pulleys I could not have seen if I had looked for them, and I knew the belt was there. . . . Never saw a cross belt before I went to work at Hingham"; and that, until the accident she "did not know there was any danger or any [thing] in the way of machinery behind that clothing could be caught in." It further appeared that a crossed belt was more dangerous, and more likely to catch clothing, than a straight belt. This was all the material evidence in the case.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

T. W. Proctor, for the defendant.

P. B. Kiernan, for the plaintiff.

MORTON, J. The space in which the plaintiff worked was narrow, and there was danger, which might have been avoided by boxing the pulleys and belt, that such an accident as occurred to the plaintiff might happen.

But we think that the risk was an obvious one, and that the plaintiff must be held to have assumed it. At the time of the injury she was twenty-five years of age, and for aught that appears was of average intelligence, and before entering the defendant's employment had worked for four years for the Suffolk Cordage Company in Chelsea, doing the same kind of work as that which she was doing for the defendant when she was hurt. Though the machines of the Suffolk Company differed in some respects from those of the defendant, the machines of the two companies resembled each other in their general character and operation, so that the plaintiff cannot be regarded as an inexperienced person set to work on machinery with which she was unacquainted. The narrowness of the space between the machines was obvious to any one. And the plaintiff's questions to the superintendent before she went to work showed that she observed it, and also the possible danger from it and from the

belt. The answers of the superintendent, that he did not think that the space was too narrow, and that there was no danger, and that " it [the belt] was perfectly safe," and that " they [the machines] were as safe as the machinery in Chelsea was," could not operate, six weeks or more after, to relieve the plaintiff from the assumption of risks which then at least were or should have been obvious to her, whatever might have been the result, if the accident had occurred immediately upon or soon after her entering the defendant's service, and while it naturally might be supposed that she was relying to some extent on the answers of the superintendent. See *Haley* v. *Case*, 142 Mass. 316.

It appeared that the belt in which the plaintiff's clothes were caught was a crossed belt, and that crossed belts are more dangerous than straight belts; and the plaintiff testified that she had never seen a crossed belt before she went to work for defendant, and that until the accident she " did not know there was any danger or any [thing] in the way of machinery behind that clothing could be caught in." But she also testified : " I worked on the same machine I was hurt on every working day, from August 15 till I was hurt [which was October 10], . . . had seen the belt and pulley; such belts and pulleys were on all the machines there; . . . I knew the belt was there, had been between those machines every working day from the 15th of August to the 10th of October; . . . nothing different that day from any other; knew the machine was running behind me when I stepped in; . . . there was nothing about the belt and pulleys I could not have seen if I had looked for them, and I knew the belt was there." It thus appeared from the plaintiff's testimony that there was nothing about the machines, or their position, or the belts and pulleys which she did not know, or might not have known if she had looked. In other words the risks were all obvious ones. No change was made before the accident, but everything remained as it was when she went to work. The crossed belt was more dangerous than a straight belt would have been, but the danger even from a straight belt would have been great. The precise amount of danger added by the crossing of the belt would not seem to be especially important. *Connelly* v. *Hamilton Woolen Co.* 163 Mass. 156. Machinery and belts of any kind in rapid motion have various elements of danger to those

employed about them.  And the question in each case is not whether the employee has actually observed and by a conscious act of the will assumed all of the risks involved, but whether the risks are incident to and naturally grow out of the employment in which he is engaged, and are such as, taking his age, intelligence, and experience into account, he must be held to have appreciated if he saw, and such as, if he did not see, he could have seen and understood if he had looked.  If the risks are of this character, then they are said to be obvious, and the employee assumes them.  *Ruchinsky* v. *French, ante,* 68.  *Vining* v. *New York & New England Railroad,* 167 Mass. 539.  *Young* v. *Miller,* 167 Mass. 224.  *Content* v. *New York, New Haven, & Hartford Railroad,* 165 Mass. 267.  *Austin* v. *Boston & Maine Railroad,* 164 Mass. 282.  *Connelly* v. *Hamilton Woolen Co.* 163 Mass. 156. *Goodes* v. *Boston & Albany Railroad,* 162 Mass. 287.  *Fisk* v. *Fitchburg Railroad,* 158 Mass. 238.  *Thain* v. *Old Colony Railroad,* 161 Mass. 353.  *Gleason* v. *New York & New England Railroad,* 159 Mass. 68.  *Patnode* v. *Warren Cotton Mills,* 157 Mass. 283.  We think that the present case falls within the rules thus laid down.

Exceptions were taken to the admission of certain evidence, but as the questions thus presented may not arise upon a new trial, if there should be one, we do not deem it necessary to consider them. '                          *Exceptions sustained.*