## MARY BURKE *vs.* HENRY M. DAVIS.

Suffolk. January 8, 1906. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence,* Employer's liability.

A guard rail above the feed board of a steam mangle in a laundry, which serves to warn the operatives by touch of the danger of having their fingers go beyond it, but although properly constructed for that purpose is not an adequate protection against the hands of the operatives being drawn between the rollers and is understood by the operatives not to be so, is not in the nature of a trap, and the danger of injuries from their hands being caught in the rollers is an obvious one assumed by the operatives.

A girl employed in a laundry, usually in the ironing room, who knowing the danger of her fingers getting caught in feeding sheets through a steam mangle reluctantly consents to undertake that work under a threat from the superintendent of dismissal if she refuses, if she is injured by her hand being drawn in between the rollers in the manner that she feared, has no remedy against her employer.

SHELDON, J. This is an action of tort brought under R. L. c. 106, § 71, to recover damages for injuries received by the plaintiff while in the employ of the defendant and engaged in feeding sheets through a steam mangle for the purpose of drying and smoothing them. The action is based on the alleged negligence of the defendant in placing the guard blade in front of the rollers of the mangle too high, so that the plaintiff's hand passed under it, and was caught between the rollers and seriously injured.

The plaintiff was seventeen years old at the time of the accident. She had been at work for the defendant about two years and a half, working in the laundry, usually in the ironing room, but not often on mangles, and then only at the request of Spargo, the defendant's superintendent. She had worked twelve or thirteen times on the mangle on which she was injured, and a few times on other mangles. This mangle is an ironing machine, consisting of a large, heated cylinder and several smaller rollers. The cylinder and the rollers revolve in opposite directions, so that the articles to be ironed are drawn between the rollers and the cylinder.

On the morning of the accident, she began some other work, and Spargo ordered her to go to work upon this mangle. When she showed reluctance to do so, he said to her, "If you don't, you can put on your hat and coat and go home." She then went to work on it with one Jennie Laughton, put two roller towels and two sheets through the rolls, and started a third sheet, which was torn. Spargo then increased the speed of the mangle, so that it ran at its highest speed, being the usual speed used in ironing sheets. The plaintiff saw him do this, and understood it. There was a guard on the mangle about one inch above the feed board and in front of the rolls. This guard had been in the same position every time that the plaintiff had worked upon the machine. The distance between the feed board and the guard was plainly visible. This guard consisted of two pieces, a circular rod an inch or a little less in diameter, and a guard blade about an inch wide and an eighth of an inch thick. The lower surface of the guard blade was parallel to the feed board and about an inch above it.

The plaintiff testified that she tried to do the best she could with the torn sheet, but it went so fast that the first thing she knew her hand was in the mangle. She also testified that Spargo told her the machine was perfectly safe; that every time he told her to go up there, she told him she didn't want to go because she knew nothing about it, and he said it was perfectly safe, that other girls had been up there and never been hurt; that she was afraid to work on this mangle because she was afraid that she would be hurt, that her hand would be caught between the rolls; that she knew that the cylinder and the rolls were revolving; that she was afraid of the mangle because she thought from her previous experience that her fingers might get so far in that they might get caught, that if her hand went in she could not get it out; that in spite of what Spargo said, she thought that he was not right, that there was more danger than he thought.

Jennie Laughton testified that the purpose of the guard was "to warn by touch of the danger of the machine if you went beyond it." Another girl employed in the laundry testified for the plaintiff that Spargo told all the girls that the guard would prevent their fingers from going in any further, but that he also said that they should look out for their hands. Another of the

girls employed in the laundry said that the guard was never changed, that her fingers usually passed under the edge of the guard in pushing the work under, that the folder could push her fingers under so that they would touch the cylinder, and this fact could be seen by any one standing on the floor who looked at it; that it would not absolutely prevent the fingers from going under. The whole arrangement of the cylinder and rolls was visible from the floor.

At the end of the plaintiff's case the judge ordered a verdict for the defendant, and the plaintiff excepted to this ruling.

The plaintiff concedes in argument that if this mangle had not been provided with a guard as above stated, she could have no remedy, for the reason that the danger of the operator's hands being dragged between the rollers was an obvious danger, and it was apparent that the only way for her to avoid danger was to keep her fingers and hands away from the rollers. She would have assumed the risk of such an accident. *Gaudet* v. *Stansfield*, 182 Mass. 451. *O'Connor* v. *Whittall*, 169 Mass. 563. *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313. *Wilson* v. *Massachusetts Cotton Mills*, 169 Mass. 67. But she argues that the effect of putting the guard upon this machine, taken in connection with the assurances made by Spargo, was to justify her in believing that it was adequate for her protection. *Stager* v. *Troy Laundry Co.* 53 L. R. A. 459; 41 Oregon, 141, 143. But in that case there was evidence that the guard plate was improperly adjusted at a greater height above the table than it was intended to be put, while in the case at bar there is nothing to show that it was improperly placed. Moreover the plaintiff, upon her own statement, was fully aware of the risk she ran in working upon this machine, and for that reason was reluctant to work upon it. It is true of her, as it was of the plaintiff in *Connolly* v. *Eldredge*, 160 Mass. 566, that the presence of the guard, though inadequate for complete protection, did not convert the mangle into a trap. She was not misled by any assurances of Spargo. *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313, 314. *Kenney* v. *Hingham Cordage Co.* 168 Mass. 278. She was not ignorant of the proper method of doing her work, as in *Manning* v. *Excelsior Laundry Co.* 189 Mass. 231. And the fact that she consented to undertake the work only

reluctantly and under a threat of dismissal if she should refuse to do it will not save her from being held to have assumed all the obvious risks of her undertaking. *Wescott* v. *New York & New England Railroad*, 153 Mass. 460. *Lamson* v. *American Axe & Tool Co.* 177 Mass. 144.

On the whole case, we are of opinion that the plaintiff had assumed the risk of the accident which happened to her, and that the verdict against her was ordered rightly.

*Exceptions overruled.*

*M. M. Lynch*, for the plaintiff.
*R. Spring*, (*H. H. Atwood* with him,) for the defendant.