## LEWANNA WILEY *vs.* JOSHUA G. BATCHELDER.

### York.    Opinion August 16, 1909.

*Master and Servant.    Unguarded Machinery.    Assumption of Risk.*

No machinery will be found safe for those who are thoughtless and inattentive or the hapless victims of unavoidable accidents.

The master is not bound to inform the servant what the servant already knew or what by the exercise of ordinary care and attention the servant might have known.

It is the duty of the master to use ordinary care to provide and maintain reasonably safe and suitable machinery for the servant to operate, so that by the exercise of due care on his part, the servant can perform the service required of him without liability to other injuries than those resulting from simple and unavoidable accidents.

If an operative continues in the service of his employer after he has knowledge of the unguarded condition of any machinery in connection with which he is required to labor, and it appears that he fully understands and appreciates the nature and extent of the perils to which he is thereby exposed, he will be deemed to have waived the performance of the employer's obligation to provide suitable guards, protecting rods and hoods for dangerous machines and to have assumed the risks of an employment to which he has thus voluntarily and intelligently consented.

If an operative does not ask for further safeguards or otherwise so conducts himself as to assure his employer that he is content with the machinery and appliances as they are, and will himself take the chance of injury, he cannot after an injury transfer the risk to his employer.

The plaintiff while operating an unguarded steam laundry mangle in the defendant's laundry, received an injury which resulted in the loss of two fingers. Upon consideration of all the evidence introduced by the plaintiff and examined in the light most favorable to her contentions, *Held:* That the danger incident to the operation of the unguarded mangle was so manifest and so fully understood by the plaintiff that she must be deemed to have assumed the risk of the employment to which she thus understandingly consented.

On exceptions by plaintiff.    Overruled.

Action on the case to recover damages for personal injuries sustained by the plaintiff while working on an unguarded steam mangle in the defendant's laundry.    Plea, the general issue.

At the conclusion of the plaintiff's evidence at the trial, and on motion of the defendant, the presiding Justice ordered a nonsuit and the plaintiff excepted.

The case is stated in the opinion.

*E. P. Spinney*, for plaintiff.

*Allen & Abbott*, for defendant.

SITTING:   EMERY, C. J., WHITEHOUSE, SAVAGE, CORNISH, BIRD, JJ.

WHITEHOUSE, J.   On the seventeenth day of July, 1906, the plaintiff, a woman fifty-five years of age, was employed as an operative in the defendant's steam laundry at Sanford and while engaged in running a table cloth through an ironing mangle received a severe injury to her left hand resulting in the amputation of the first and second fingers.   This ironing machine, known as a Ternary Mangle, consisted of a steam-heated drum or cylinder about fifteen inches in diameter over which were three smaller cylinders or rollers about eight inches in diameter padded with cloth. In front of the heated drum and about half an inch from it, was a board about a foot wide called an apron or feed board.    The small rollers above were so close to the heated drum that a table cloth placed upon the apron against the revolving drum would be carried up and gripped between the drum and the small rollers and dried and smoothed as it was carried through.    It was the duty of the operative to keep it smooth by holding it on the feed board and in some instances to retain her hold upon the corners of it until it was within an inch of the point of contact with the upper rollers.

This mangle had been used by the defendant and his predecessors in the same laundry for more than three years prior to the accident, without any guard rail or protection bar to prevent the hands of the operative from being caught between the cylinders. Indeed it appears from the evidence introduced by the plaintiff that the work which this machine was designed to perform, could be more easily and rapidly done without any guard rail or protecting rod, and that this method of operating it was accordingly preferred by the operatives as well as by the proprietors.

The plaintiff had worked in this laundry at different times for more than a year, and for about four weeks before the accident had constantly operated this mangle. Prior to this month of steady work upon it, she had occasionally operated it with the assistance of another person during the year or more of her employment there and during her entire service in connection with this mangle, no guard rail was ever used upon it. Her description of the mangle and the proper method of operating it, as given in her testimony, discloses a full knowledge and appreciation on her part of the nature and extent of the danger to which she was exposed in operating it without a guard rail. In cross examination she testified that she could see the machine in front of her and knew if she put her hand in there she would get hurt, but added "I didn't put my hand in there; it went in accidently." It also appears that the accident happened during a violent thunder shower, and there is evidence tending to show that after the accident the plaintiff stated that she jumped at a flash of lightning and put her hand into the mangle, and that "there was nobody to blame but herself."

In this action to recover damages for the injury received by the plaintiff, it is contended in her behalf that the mangle in question upon which she was engaged to work was structurally defective and unsuitable by the reason of the absence of a guard rail or protection bar, and that there was a failure of duty on the part of the defendant in this respect and also by his omission to give the plaintiff instruction and warning in regard to the perils incident to the operation of the machine without a guard rail.

At the close of the testimony introduced in support of the plain-

tiff's contention, on motion of the counsel for the defendant the presiding judge ordered a nonsuit to be entered. The case comes to the Law Court on the plaintiff's exceptions to this ruling; but a careful examination of all of the evidence in the light of established principles of law, leads irresistibly to the conclusion that the nonsuit was properly ordered and that the exceptions must be overruled.

The doctrine of the assumption of risks by laborers who engage to operate unguarded machinery similar to that in the case at bar, the dangers of which are manifest and readily discernible, has been repeatedly examined and carefully considered in the recent decisions of this court, and no extended discussion of the principle is now required. It was the primary duty of the defendant to use ordinary care to provide and maintain reasonably safe and suitable machinery for the plaintiff to operate, so that by the exercise of due care on her own part, the plaintiff could perform the service required of her without liability to other injuries than those resulting from simple and unavoidable accidents. But the rule is now equally familiar and well settled at common law that if an operative continues in the service of his employer after he has knowledge of the unguarded condition of any machinery in connection with which he is required to labor, and it appears that he fully understands and appreciates the nature and extent of the perils to which he is thereby exposed, he will be deemed to have waived the performance of the employer's obligation to provide suitable guards, protecting rods and hoods for dangerous machines and to have assumed the risks of an employment to which he has thus voluntarily and intelligently consented. *Cunningham* v. *Iron Works*, 92 Maine, 511, and cases cited. If the operative "does not ask for further safe-guards or otherwise so conducts himself as to assure his employer that he is content with the machinery and appliances as they are, and will himself take the chance of injury, he cannot after an injury transfer the risk to his employer." *Jones* v. *Mfg. Co.*, 92 Maine, 569; *Dempsey* v. *Sawyer*, 95 Maine, 298; *Cowett* v. *Woolen Co.*, 97 Maine, 546; *Babb* v. *Paper Co.*, 99 Maine, 303.

In *O'Connor* v. *Whittall*, 169 Mass. 563, it was held that if a boy who is set at work upon a dangerous machine appreciates and

understands the risk and continues to work on the machine without objecting to the want of a guard, the fact that the machine might have been safer with a guard is immaterial.

Although there is no reported decision of the Law Court in this State involving the application of this familiar doctrine to an unguarded or imperfectly guarded laundry mangle, several cases have been determined at nisi prius by an application of the rule to machinery and situations closely analogous to those at bar, and in other jurisdictions the question has been repeatedly the subject of judicial inquiry by courts of last resort. *Gaudet* v. *Stansfield*, 182 Mass. 451, was an action at common law to recover damages for an injury received by the plaintiff, a French girl nineteen years of age by having her hand caught by the revolving rolls of a steam mangle upon which she had been at work for three weeks, and upon which there appears to have been no effectual guard or protection rod to prevent the hands of the operative from coming in contact with the roll. But there was a brass guide on the edge of the apron over which the clothes were passed by the operator and carried between the roll and the steam chest. The machine was not boxed in and all parts of it could be seen. It is said in the opinion that the danger of having her hands drawn into the roll if she put them outside of the brass guide, was an obvious one of which no warning was necessary, and that being a person of average intelligence she was chargeable with knowledge of it. It was accordingly held that a verdict for the defendants was properly ordered. In *Burke* v. *Davis*, 191 Mass. 20, the protecting rod and guard blade did not afford complete protection, but the plaintiff, a girl seventeen years of age was held to have assumed the risk of the accident which happened to her by having her fingers caught between the cylinders and the rollers. In the opinion the court say: "The plaintiff concedes in argument that if this mangle had not been provided with a guard as above stated, she could have no remedy, for the reason that the danger of the operator's hands being dragged between the rollers was an obvious danger and it was apparent that the only way for her to avoid danger was to keep her

fingers and hands away from the rollers.    She would have assumed the risk of such an accident."

In *Hanson* v. *Hammell et al.*, 77 No. West. Rep. (Iowa 1899) the plaintiff's hand was injured by being caught between the rollers of an ironing mangle while she was putting beeswax on one of the rollers.    She knew the danger of having her hand caught and knew that the guard in front of the rollers had been removed to enable her to perform the work required of her more readily.    It was held that as the particular peril attending the performance of the work as she did it, was apparent to her and fully comprehended, no admonition on the part of the defendants was necessary and she was not entitled to recover.    See also *Hoyle* v. *Steam Laundry Co.*, 21 So. Eastern Rep. (Georgia 1894.)

In *Hickey* v. *Taaffe*, 12 No. East. Rep. 286 (N. Y. 1887) there were no guards in front of the rollers of an ironing machine which the plaintiff was operating, and while employed in feeding collars to the machine, her finger was caught in the button hole of a collar and her hand drawn between the rollers and injured.    The plaintiff was between fourteen and fifteen years of age and at the time of the injury had worked on the machine about six weeks.    It appeared that she fully understood and appreciated the dangers to be apprehended from operating the machine, and it was accordingly held that she assumed the risk incident to the employment.

In *Greef et al.* v. *Brown*, 51 Pac. Rep. 926, (Kansas 1898) it appeared that there was a guard board in the defendant's laundry building, which was designed by the manufacturer of the mangle used by the defendant to protect the operator, but it had never been used, and the defendant was wholly ignorant of its existence.    The plaintiff, a girl seventeen years of age, had been at work on the unguarded machine for a day and a half when her hand was caught between the cylinders and injured.    It was held that as the danger was entirely open and apparent to even casual observation, no warning or caution could have increased her knowledge of it and that she must be deemed to have assumed the risk.

In *Stager* v. *Laundry Co.*, 63 Pac. Rep. (Oregon 1901) the operative was injured by having her hand caught between the rollers

and the drum of a mangle called the Wendell Annihilator upon which she was at work and in the action for damages her contention was that the guard plate was too high allowing her hand to pass under it into the machine and that she would not have received the injuries if the guard plate had been properly adjusted. She testified that she had worked at other mangles without any guard rail and did not realize the nature and extent of the danger in operating this one because she relied upon the guard plate for protection. Upon this state of facts the court declined to say as a matter of law that she assumed the risk by continuing in the service and held that a non-suit was properly denied. In the opinion, however, the court say: "Now, it is urged that the risk to which the plaintiff subjected herself was both an incident to the business and obvious. The authorities appear to be uniform and conclusive that, where a machine similar to the Wendell Annihilator in principle is operated without a guard plate; the operator assumes the risk; for in such case the method of operation is known, and the peril patent.

In the case at bar it has been seen that the plaintiff was a woman of mature age with at least average intelligence. She had worked in this laundry for more than a year and both by observation and actual experience had obtained full knowledge of the method of operating a mangle without a guard rail, and full opportunity to ascertain and appreciate the dangers incident to the use of such a machine. She had never operated any other mangle, and had no information in regard to the use of a guard rail.

Nor was there any failure of duty on the part of the defendant in omitting to give the plaintiff positive and specific instructions in regard to the liability of having her fingers caught between the cylinder and rollers of this machine.

The extent of the obligation resting upon the employer to give such instruction must be determined with reference to the reciprocal duty resting upon the plaintiff to exercise the senses and faculties with which she was endowed in order to discover and comprehend these dangers for herself. He was not bound to inform her what she already knew or what a person of her experience and capacity, by the exercise of ordinary care and attention might have known. The

machine had been operated successfully and satisfactorily by the defendant and his predecessors in that laundry for more than four years, and was apparently reasonably suitable for the purposes for which it was designed. The fact that the accident might possibly have been avoided by the adjustment of a guard rail has no necessary tendency to prove that the existing conditions did not meet the requirements of reasonable safety. No machinery will be found safe for those who are thoughtless and inattentive or the hapless victims of unavoidable accidents.

Upon consideration of all the evidence introduced by the plaintiff, examined in the light most favorable to her contentions, it is the opinion of the court that the danger incident to the operation of the unguarded mangle was so manifest and so fully understood by her that she must be deemed to have assumed the risk of the employment to which she thus understandingly consented.

*Exceptions overruled.*