[No. 9006.   Department Two.   December 22, 1910.]

ALICE COX *et al.*, *Respondents*, *v.* WILKESON COAL & COKE COMPANY, *Appellant.*[1]

MASTER AND SERVANT—COAL MINE—SAFE PLACE — ASSURANCE OF FOREMAN.   After an unsuccessful attempt to cause a "squeeze" in a coal mine, the assurance of the foreman, after inspection, that the place was safe, is an undertaking of the master and may be relied upon by miners called to the place.

SAME—DUTY OF MASTER—TRIAL—INSTRUCTIONS—HARMLESS ERROR. It is not prejudicial error requiring a reversal of the case that the duty of the owner of a coal mine was defined by reference to what "could" have been done instead of what "should" have been done to render the place safe, where the true tests were given in other instructions and it does not appear that the jury were misled.

SAME—NEGLIGENCE—EVIDENCE—ADMISSIBILITY.   In an action for the death of a coal miner, caused by a cave-in after an unsuccessful attempt to draw a pillar, it is not error to admit evidence that pillar drawing is the most dangerous work in the mine, or that it would have been safer to discontinue work at that place for a time.

DAMAGES — PERSONAL INJURIES — EXCESSIVE VERDICT.   A verdict of $16,500, reduced to $14,000, for the death of a coal miner, thirty-five years of age, who was industrious and thrifty, is not excessive.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered February 19, 1910, upon the verdict of a jury rendered in favor of the plaintiffs, in an

[1]Reported in 112 Pac. 231.

action for damages for the wrongful death of an employee in a coal mine. Affirmed.

*Hudson & Holt*, for appellant.

*Fitch & Jacobs*, for respondents.

MORRIS, J.—The facts, in so far as they are pertinent to the appeal herein, are as follows: On March 12, 1908, J. H. Cox, husband and father of respondents, was at work in appellant's mine, in what is known as pillar No. 119. He had with him a working partner named Hudson. The method used in working the mine was to run vertical breasts which would be intersected by crosscuts, dividing the coal into large blocks. The line of blocks between any two breasts was called a pillar. The coal is taken out as quickly as it can be done, and its place is supplied by props and cogs which support the roof. After the coal is taken out, it is expected that the roof will shut down and close up the space from which the coal was removed. This closing in of the roof is called a "squeeze," and is usually a gradual one, depending somewhat upon the character of the deposit lying between the coal and the rock. A squeeze is generally foretold by falling rock or coal, in time to seek protection against it; although they are known to occur without any previous indication or warning. The miners in working the pillars start in at the upper corner of a block and take the coal off at an angle so it will fall into the breast. They leave the rear end of the block for the time, and this is known as the "tail." The tail in block 119 extended from crosscut No. 6 to crosscut No. 7, and was about four feet wide.

The day before the accident, the foreman of the mine observed that no squeeze had taken place for some distance in pillar No. 119, and that it was open up to crosscut No. 9. Knowing there was danger of a cave-in, he considered it prudent to draw the tail of the block between crosscuts 6 and 7, in order to bring about a squeeze. He discussed the matter with Cox and Hudson, and it was understood that it should

be done, and a squeeze produced. Next morning Cox was told by the assistant foreman to wait before going to work and he would come up and draw the tail, which it was expected would bring about the squeeze. The holes were bored, filled with dynamite, and the fuse lighted by the assistant foreman and, accompanied by Cox and Hudson, he went into crosscut No. 6, pillar 120, where they would be safe until the shot had exploded and the expected squeeze followed, which it was anticipated would occur, if at all, in about twenty minutes. They remained in crosscut No. 6 about twenty minutes after the shot had been fired, when the assistant fireman went up among the props and cogs to note the effect of the blast. The tail had not run out, but was apparently blocked on top of the cog underneath crosscut No. 6. He says he saw no indication of a squeeze. He then came back and waited in the crosscut for a short time, when hearing no indication of a cave-in, he went down below into the pillar between crosscuts 5 and 6, and commenced putting in a battery, an arrangement of planks under the open space of the tail to protect the men from falling rock, as he expected a squeeze. He then called Cox and Hudson to come, telling them "it was all right; them cogs were all right." They came in response to his call, and had been there but a few minutes, when a large cave-in took place, and in falling swept away the props and hurled a large mass of rock down into the pillar where the men were, killing Cox. The action was brought, alleging negligence in failing to make the place reasonably safe, and a reliance upon the assurance of the assistant foreman that the place was safe. There were other allegations of negligence, but they are not material to our view of the case. Verdict was returned for $16,500, which was reduced by the court, and judgment entered for $14,000, and the company appeals.

The errors assigned are in denying appellant's motion for judgment, and new trial, in the admission of testimony, and in the instructions. There was ample proof of negligence to sustain the judgment. When the assistant foreman undertook to

ascertain the condition of the place as to its safety after the
shot had been fired, he was undertaking the master's duty.   In
calling to Cox and telling him that the place was safe, it was
an assurance of safety upon which Cox had a right to rely.   It
was made upon and after an inspection of the conditions, and
Cox could rely upon the sufficiency of the examination and the
truthfulness of the result.   If Cox had suspicions of danger,
he was not free to act upon them.   He had been called by one
in authority over him, and told the place was safe.   It was his
duty to obey the call, and in so doing he could rely upon the
safety of the place to which he was called.   He was not re-
quired to then make a critical examination.   The assurance of
the foreman was sufficient for his protection in law.
*Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac.
121; *Hilgar v. Walla Walla*, 50 Wash. 470, 97 Pac. 498;
*McKenzie v. North Coast Colliery Co.*, 55 Wash. 495, 104
Pac. 801.   Labatt, Master & Servant, § 440.   There was,
therefore, no merit in appellant's motion for judgment.   The
alleged vice in the instructions consists in the use of the word
*could* in saying to the jury:

"You should not render a verdict against the defendant
in this case because the place of work was unsafe, unless you
find from the evidence that the employer could have taken
some action which would have rendered the place more safe,
and unless you find that such action would have been taken
by a reasonably prudent employer.

"In regard to the method of work, you are to consider the
method of work with reference to the conditions at the place
where the work was being done.   If at the place where the
work was being done the method used by the employer was
as safe as any other that could have been used, it would be
your duty to find that the employer was not negligent with
reference to the method of working."

It is true that the test of appellant's liability in this con-
nection is what the reasonably prudent man, not *could*, but
*would* have done under similar conditions; and the use of the
word "could" in this connection was unfortunate, although

the proper qualification is given in the first two instructions. Appellate courts, however, are not justified in reversing judgments because of the use of an improper word in an instruction, unless it is apparent that its use would mislead or confuse the jury, and we have often held, as have other jurisdictions, that where the rules and tests of liability are correctly given to the jury by the court, the instructions will be read as a whole; and no error will be found because of the use of an improper word in one or more instances unless prejudice is apparent. We have examined each of the instructions given, and find the court in correct language defining the liability of the appellant and giving the true tests for determining negligence, as defined in the following instruction:

"In determining the question as to whether the defendant or its foreman was negligent, I instruct you that the way to determine whether a man has been negligent or not is to compare what was done by such person—or left undone by him— with what would have been done or left undone by a man acting with ordinary prudence. If a man acts as an ordinarily prudent man would act under the same circumstances and conditions, there is no negligence. If a man fails to act as an ordinarily prudent man would under the same circumstances and conditions, there is negligence."

This was a clear, apt expression of the true rule, and one which the jury could readily understand and easily comprehend. In another instruction the court told the jury "it was the duty of the master to see that the mine was properly timbered, and if you should find from the evidence that there were safe and unsafe ways of timbering the mine known to the defendant, then it became the duty of the defendant to adopt the safe way;" and if the safe way was not adopted and would have been with reasonable prudence, the defendant was negligent. Counsel for appellant critically analyze this instruction, and think they find a possibility of an erroneous meaning. We see no error in it, and think its meaning clear and capable of comprehension by the jury.

Coming to the testimony, respondents were permitted to

show that pillar drawing was the most dangerous work in the mine. We think appellant's objection to this testimony is more refined than real. We see no error in it. There was also testimony to the effect that it would have been safer to have left the tail of the pillar in place and gone elsewhere and mined, when it was discovered that the top was loose. We do not see the relevancy of this testimony, but can see no prejudice to appellant in its admission.

The next complaint is of the size of the judgment. The deceased was thirty-five years of age, earning fair wages, and had accumulated two lots, a house and a two-acre piece of land in Puyallup. He was evidently industrious and thrifty, and we can find no reason to disturb the verdict.

Judgment affirmed.

RUDKIN, C. J., DUNBAR, and CROW, JJ., concur.
CHADWICK, J., concurs in the result.