[No. 9518. Department Two. October 4, 1911.]

ANNIE WATERMAN *et al.*, *Appellants*, v. SKOKOMISH TIMBER COMPANY, *Respondent*.[1]

MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE APPLIANCES—EVI-
DENCE—QUESTION FOR JURY. The negligence of a logging company in overloading a boat, so that it was overturned and two men drowned, is for the jury, where it appears that the boat was leaky, that it was put out into a swift stream with nine men in it, and not equipped with paddles or oars, so that it became unmanageable in the swift current.

SAME—ASSUMPTION OF RISKS—OBVIOUS DANGERS. In such a case, the boatman, an Indian, in charge of the boat, assumes the risks, where it appears that he was skilled in the navigation of the river and knew the capacity of the boat better than any one else, and that it was leaky, and that he made no request for paddles or any complaint or protest.

SAME—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE—OBEDI-
ENCE TO ORDERS—OBVIOUS DANGERS—EVIDENCE—SUFFICIENCY. In such a case, a direction by the foreman to another man to get into the

[1]Reported in 118 Pac. 36.

boat so that they could go on, does not amount to an order to the boatman that would relieve him of the assumption of risks or the charge of contributory negligence, where it was not intended as an order and no order was necessary, and where the dangers were so obvious and imminent that a reasonably prudent man would not have undertaken the service.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered February 20, 1911, upon granting a nonsuit in an action for wrongful death. Affirmed.

*Bates, Peer & Peterson* and *S. P. Richardson,* for appellants.

*Hudson, Holt & Harmon,* for respondent.

ELLIS, J.—This is an action by the appellants, widow and children of one Ned Waterman, to recover damages from the respondent, Skokomish Timber Company, for his death, which it is claimed was the result of respondent's negligence. From a judgment of nonsuit and dismissal and an order overruling appellant's motion for new trial, this appeal is prosecuted.

During the fall of 1910, the respondent was engaged in the logging business, and was driving logs upon the Skokomish river. The work was in charge of one Clarence W. Gregory as general manager. The stream is a small, swift mountain stream, and river driving thereon can be prosecuted only during high water. Some nine men, apparently all Indians, except the manager, were employed in the work at the time of the accident, among them the deceased, Ned Waterman. The work of river driving consists of releasing logs which have become lodged along the banks of the stream, and in jams therein, so that they may float with the current down to tide water. A boat is necessary, or at least convenient for use in this work, to convey the men from side to side of the stream and down stream in stretches where no logs are lodged.

On November 7, 1910, when the men started to work, Waterman and a man named Robinson took charge of the boat, apparently by common consent. At first they used a small boat, but in the afternoon they and one Adams went across the river and secured a larger boat, a cedar "dug-out," thirty feet long with a three-foot beam, belonging to the respondent company. Waterman brought over the large boat, and thereafter he and Robinson took charge of it, propelling it with poles 12 to 14 feet long, Waterman in the stern and Robinson in the bow. Work was begun at a considerable distance up stream, and gradually continued down stream till a stretch of river clear of logs was reached, when the men were at intervals taken into the boat in order to go down stream to loosen a jam of logs near where the accident occurred. The work seems to have progressed in this manner, not under any specific orders, but in pursuance of the ordinary custom of river driving.

Adams testified that, at a point about half a mile above the place of accident, six men being then in the boat, Gregory called to two other men to get in. One of the men, Charlie Frank, answered that the boat seemed to be already loaded. Gregory replied, "in an off-hand way 'that is all right, get on.' " These men being taken in, the boat on the way down got crosswise in the current and came near capsizing. The boat was stopped about 600 feet above the place of accident, in a quiet eddy, to loosen some logs and wait for the ninth man, one Wes Whitener, the river boss. This man came down the stream riding a log, which floated into the eddy beside the boat so that he stepped from the log into the boat. Practically all of the material testimony was given by Adams. He says that when Whitener came down standing on the floating log, Gregory said, "Get into the boat, Wes, and let's go on;" that he, Adams, had said just before this, realizing the danger as he viewed the turgid current below, "Boys here is where we have to swim." He did not know whether

Gregory heard this remark or not, but neither Gregory nor any one else said anything in reply. There was rather a sharp bend in the river at this point, the current, which was very swift, running near the left bank where the boat was, and Adams testified that if the boat had been driven to the other side it could have proceeded down stream with comparative safety. When the ninth man was in, Waterman with his pole shoved the boat out into the current with the bow pointing slightly down stream. The current caught it, it immediately became unmanageable, the water apparently being too deep for the poles to reach bottom, it was carried sidewise rapidly down stream, striking a small partially submerged jam of two or three logs, and overturned, precipitating all of the men into the water. Waterman and Robinson were drowned. The others swam ashore.

The negligence charged is that the boat was leaky, that it was not equipped with paddles, and that it was overloaded. The answer denied negligence, and set up as affirmative defenses assumption of risk and contributory negligence on the part of the deceased. These were traversed by the reply.

Conceding verity to all of the plaintiffs' evidence, and indulging every influence favorable to plaintiffs which may reasonably be drawn therefrom, we are satisfied that it was sufficient to take the case to the jury on the charges of negligence. The boat was leaky and had a knot hole in the side over an inch in diameter. The stream was rapid and snaggy, and in places so deep that the bottom could not be reached with the poles used. The evidence tends to show that paddles or oars would have been of aid in such places. The boat was much overladen, considering the character of the stream. It was originally intended to accommodate six or seven men at most.

It is, of course, conceded as elementary that Waterman assumed the risk of all dangers incident to the ordinary work of river driving. These included the dangers resulting from

the swift, swollen and snaggy condition of the stream, which it is admitted was too small and shallow for river driving except at time of high water. These dangers, though great, were ordinary and necessarily incident to river driving in high water. They were open, patent and obvious to any man, and especially to an experienced river man. Beyond question the work was inherently and unavoidably hazardous with any kind of boat, whatever the equipment and however light the load.

It is also beyond question that in this case the leaky boat, the lack of paddles, and the overloading increased the danger and enhanced the risk. But these things were also open, patent and obvious. Waterman knew them and must have appreciated the danger resulting from them. He was a man forty-six years old. He is not shown to have been wanting either in common understanding or in experience as a river man. On the contrary, it is plainly inferable from the evidence that he was bred to that life and labor and was skilled in the navigation of the river and in the management of boats. He knew that the boat was leaky. He found it full of water when he first secured it. He had helped to bail it out then and at the eddy. He knew there were no paddles in the boat and knew the danger resulting from their lack. He had almost lost control of the boat, as Adams intimates for lack of paddles, earlier in the day. It does not appear that there were no paddles with the boat when he found it, nor does it appear that he could not have had paddles for the asking. He knew the boat was overloaded. He had been in it longer than any other man of the party. He had a better opportunity to gauge its capacity than any other man there. The peril to be encountered in shoving the boat into the current, under the conditions as detailed by Adams, was so obvious that the minds of reasonable men could not differ as to its imminence. Adams graphically anticipated it in his words at the time, "Boys here is where we have to swim!" Water-

man was the boatman and knew the difficulties of manage-
ment and consequent dangers caused, or likely to be caused,
by these things as well as any man could.  He made no com-
plaint, suggested no change, uttered no protest.  He must
be held to have assumed the risk of the enhanced danger.

"A servant who, either before or after he commences the
performance of the contract of employment, has ascertained,
or ought, in the exercise of proper care, to have ascertained,
that the ordinary hazards of his environment have been aug-
mented by abnormal conditions produced by the negligence
of his master or of his master's representative, and has ac-
cepted or continued in the employment without making any
objection and without receiving any promise that the ab-
normal conditions will be remedied, is deemed, as a matter of
law, to have assumed the risk thus superadded, and to have
waived any right which he might otherwise have had to claim
an indemnity for injuries resulting from the existence of that
risk."  1 Labatt, Master and Servant, pp. 639-641, § 274.

For judicial statements of this doctrine, see 1 Labatt, Mas-
ter and Servant, §274a.  An unbroken line of decisions by this
court is in harmony with the above rule.  *Deaton v. Abrams*,
60 Wash. 1, 110 Pac. 615; *Shore v. Spokane & Inland Empire
R. Co.*, 57 Wash. 212, 106 Pac. 753; *Ford v. Heffernan En-
gine Works*, 48 Wash. 315, 93 Pac. 417; *Bier v. Hosford*,
35 Wash. 544, 77 Pac. 867; *French v. First Avenue R. Co.*,
24 Wash. 83, 63 Pac. 1108; *Danuser v. Seller & Co.*, 24
Wash. 565, 64 Pac. 783; *Brown v. Tabor Mill Co.*, 22 Wash.
317, 60 Pac. 1126; *Anderson v. Inland Telephone etc. Co.*,
19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Bullivant v.
Spokane*, 14 Wash. 577, 45 Pac. 42; *Olson v. McMurray
Cedar Lumber Co.*, 9 Wash. 500, 37 Pac. 679; *Week v. Fre-
mont Mill Co.*, 3 Wash. 629, 29 Pac. 215; *Mayer v. Queen
City Lumber Co.*, 64 Wash. 567, 117 Pac. 392; *Snyder v.
Lamb-Davis Lumber Co.*, 64 Wash. 587, 117 Pac. 399.

But it is urged that Waterman was relieved of the as-
sumption of risk because, as it is claimed, he acted upon an
assurance of safety and under an order to proceed.  The evi-

dence fails to sustain this contention. The only evidence from which it is claimed an assurance of safety may be inferred is that, at another time and in a different place, Gregory told another man, Frank, "That is all right, get on." The only evidence from which it is suggested an order to Waterman to shove into the stream from the eddy can be gathered is the fact that Gregory then said also to another man, Whitener, "Get into the boat, Wes, and let's go on." There is no evidence that Waterman heard either of these remarks; but assuming that he did, they fall far short of being sufficient to invoke the rule relied upon by the appellants. An assurance of safety, in order to absolve the servant from the assumption of risk otherwise assumed, must be such that, under the given circumstances, it is reasonably calculated to allay his fears and subordinate his judgment to the superior knowledge of the master. 1 Labatt, Master and Servant, §§ 449-451.

In the case before us there is no evidence that Gregory possessed, or assumed to possess, any knowledge superior to that of Waterman, or ever in any way, from start to catastrophe, sought by word or act to influence Waterman's conduct. There is no evidence of any word having passed between them throughout the entire day. Moreover, where the dangers are open and obvious and equally within the knowledge of man and master, the servant is held to assume the risk notwithstanding assurance of safety, where there is no promise to repair defects or remedy conditions, or other circumstances showing overpersuasion. *Kenney v. Hingham Cordage Co.*, 168 Mass. 278, 47 N. E. 117; *Toomey v. Eureka Iron & Steel Works*, 89 Mich. 249, 50 N. W. 850; *Burke v. Davis*, 191 Mass. 20, 76 N. E. 1039, 114 Am. St. 591, 4 L. R. A. (N. S.) 971; *Anderson v. Akeley Lumber Co.*, 47 Minn 128, 49 N. W. 664; 1 Labatt, Master and Servant, § 452. We have found no authority, and have been cited to none, where a remark addressed to another person at another time and place, neither intended to influence nor shown to have in-

fluenced the conduct of the complaining servant, has been held to absolve him from assumption of risk of obvious dangers.

As to the alleged order, it is plain that Gregory's remark to Whitener was not an order to Waterman. There is no evidence from which it can be inferred that it was so intended or so understood. No order was necessary. The work was progressing as intended from the start. When Waterman pushed the boat into the current he did an act contemplated by all parties when the boat stopped to wait for Whitener. The objective point was, and all along had been in contemplation of all, the large jam below. There is no fact or circumstance to justify an inference that Waterman's act was influenced or induced by Gregory's remark to Whitener. Even in case of an unquestioned order it must appear that the order was the impelling cause of the act, before it will be held to relieve the servant from the burden of a risk otherwise assumed, or from the charge of contributory negligence in doing the thing ordered.

"Upon general principles it is clear that a servant cannot recover on the ground that, when the accident occurred, he was complying with an order, unless it is shown that the order was the operative influence which led to his doing the act which was the immediate cause of the injury." 1 Labatt, Master and Servant, § 436.

See, also, *Novock v. Michigan Cent. R. Co.*, 63 Mich. 121, 29 N. W. 525; *Herold v. Pfister*, 92 Wis. 417, 66 N. W. 355; *Brennan v. Front St. Cable R. Co.*, 8 Wash. 363, 36 Pac. 272.

But there is another ground which in any event must preclude recovery in this case. Where the danger of the act which the servant undertakes is open, patent, and obvious alike to man and master, and so plain that reasonable men could not differ as to its existence, and so imminent that a reasonably prudent man would not undertake the act, then the servant does not any less assume the risk of injury, or escape the

charge of contributory negligence as the case may be, be-
cause the act is undertaken under an order from the master.
Such is the general rule where the act is a part of the regular
work in which the servant is employed, in the absence of
emergency, promise to repair, or other exculpatory circum-
stances.

" 'There is no doubt of the general rule that one who,
knowing and appreciating the danger, enters upon a perilous
work, even though he does so unwillingly and by order of his
superior officer, must bear the risk.' No differentiating sig-
nificance, therefore, can be ascribed to the fact that the in-
jury was received as the result of obeying an order, where it
appears that the servant was merely directed to do something
which was a part of the regular work of the establishment in
which he was employed, and that the risk to be encountered
was fully comprehended by him. Similarly, in cases where
the only possible inference from the testimony is that the re-
sponsibility for any injury that might result from the risk in
question had, in consequence of his having remained in the
employment with a full knowledge of that risk, been shifted
to the servant before the date of the accident, the mutual ob-
ligations of the parties are in nowise modified by the fact
that the immediate occasion of his being in the position in
which he was when the injury was received was his compli-
ance with an order." 1 Labatt, Master and Servant, § 438.
See, also, *Chicago Great Western R. Co. v. Crotty*, 141 Fed.
913; *Lindsay v. Hollerbach & May Contract Co.*, 29 Ky.
Law 68, 92 S. W. 294; *Knorpp v. Wagner*, 195 Mo. 637, 93
S. W. 961; *Burke v. Davis, supra; Ives v. Wisconsin Cent. R.
Co.*, 128 Wis. 357, 107 N. W. 452. The decisions of this
court are also in accord with this general rule. *Bier v. Hos-
ford*, 35 Wash. 544, 77 Pac. 867; *Lee v. Northern Pac. R.
Co.*, 39 Wash. 388, 81 Pac. 834.

The appellants contend that, inasmuch as Adams testified
that any one whether experienced or not could see that there
was great danger in pushing the overloaded boat without
paddles into the current from the eddy, and Gregory testified
that he expected to make the trip safely, there was such a dif-

ference of opinion as to make the case one for the jury. Neither Gregory nor any one else, however, testified that, under the conditions, it seemed reasonably safe to venture into the current with the overloaded boat without paddles. Doubtless most of the men hoped to get through safely, but no one can read the testimony without being convinced that all of these men must have realized the danger and imprudently consented to take the chance. It is not essential to an assumption of risk that the course adopted be manifestly suicidal. It is sufficient if the danger is so obvious that the dictates of ordinary prudence would preclude taking the risk.

Lack of space precludes a review of all of the authorities cited by the appellants. They are not controlling on the facts here presented. For example, in *Cox v. Wilkeson Coal & Coke Co.,* 61 Wash. 343, 112 Pac. 231, Cox did not, after the blast was fired, inspect the place in the mine to which he was ordered. The assistant foreman examined it and ordered Cox in, assuring him that the place was safe. The court very properly held that the duty of inspection was not upon Cox as he had the right to obey the order relying upon the foreman's examination. In *Beseloff v. Strandberg,* 62 Wash. 36, 113 Pac. 250, there was a discussion between Beseloff and one of the defendants as to the safety of the place. The defendant examined it, assured Beseloff that it was safe, ordered him to continue work, and promised to put in props. An examination of the other cases cited shows a like wide divergence from the facts here.

Loath as we are to sanction the taking of any case from the jury on a controverted question of fact, it seems to us that if there ever was a case in which a palpable danger was knowingly and voluntarily encountered that case is presented by the evidence here.

Judgment affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.