## Illinois Central Railroad Company v. Wm. H. Sanders.

1. INSTRUCTIONS—*Where the Evidence is Conflicting.*—Where the issues are contested and the evidence conflicting, extreme care is required in instructing the jury as to the law.

2. SAME—*Plaintiff Must Inform Himself of His Surroundings.*—An instruction which practically tells the jury that the plaintiff had a right to shut his eyes and refuse to inform himself as to the condition of the track and the nature of his surroundings, notwithstanding the fact he may have had ample opportunity for investigation or even for acquiring a true knowledge of the situation by ordinary observation without any effort at investigation, is erroneous.

3. SAME—*Liability of Master—Information of Servant.*—An instruction which, in effect, informs the jury that a master is liable even though the servant may have had such information of his surroundings as would have put a reasonably prudent man on his guard, provided that information did not amount to full information, or, as the average juror would understand the language, to absolute certainty, is erroneous.

4. SAME—*Error in One Instruction Not Always Cured by Others.*—Where the evidence is conflicting and the balance doubtful, an instruction, erroneously assuming a fact in issue, is not cured by other instructions which assume that the question is still open.

5. MASTER AND SERVANT—*Duty of the Servant as to His Surroundings.*—The rule that the servant is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings,

etc., in the absence of notice of defects is not applicable to the case of one who has been in the employment of his master for such a length of time as to require him, in the exercise of ordinary prudence, to take some notice of his surroundings.

6. RECORD—*When it Does Not Contain All the Instructions Given.*— When the record does not contain all the given instructions, yet, if instructions given and preserved contain errors which could not have been cured by others, it is proper to reverse the judgment because of the giving of such erroneous instructions.

Trespass on the Case, for personal injuries. Appeal from a judgment of the Circuit Court of Marion County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Submitted at the August term, 1894. Reversed and remanded. Opinion filed March 23, 1895.

GREEN & GILBERT, attorneys for appellant; W. and E. L. STOKER, of counsel.

SAMUEL L. DWIGHT and FRANK F. NOLEMAN, attorneys for appellee.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Appellee, aged twenty-six years, was an experienced brakeman and switchman, and had been working for appellant for two or three years. He began work on the "run" between Effingham and Centralia, on February 2d or 3d, 1892, and received the injuries sued for while attempting to make a coupling at Edgewood on February 22d, of the same year. The freight train on which he was working during this period of time, left Centralia about 6:30 A. M., and made the run to Effingham and back by 5:30 P. M., according to the schedule, but an hour or more later according to the fact, the delay arising from the large amount of work required of this train, which consisted not only in receiving and delivering freight, but also in switching and placing cars at ten or eleven stations where there was no local switch engine. The train was required to keep out of the way of all other trains running on scheduled time. The Ohio and Mississippi road crossed appellant's road just south of Edgewood, and the two roads,

I. C. R. R. Co. v. Sanders.

for mutual convenience in transferring freight, were connected by a "Y." Besides the main track, appellant had here a "pass" track and a "house" track.

When the train in question, proceeding south, arrived at Edgewood at three or four o'clock in the afternoon of February 22d, and surmounted and began to descend the elevation about one mile north of the station, arrangements were made to cut the train into two parts and throw two cars on the "Y." This was done, and the rear part of the train, consisting of four cars and a caboose, was left standing on the main track with the south car over what is denominated by the witnesses a cattle-guard. There was no highway here and the so-called cattle-guard was in the nature of trestle work over a small ravine or depression eight feet in width.

The engine and such cars as were still attached thereto, proceeded toward the south. Some switching was done there, and then the engine and cars were backed up the main track to be coupled to the rear part of the train. The two cars to be coupled together belonged to different roads, and the draw-bar of one was higher than that of the other, thus rendering the coupling somewhat difficult under certain circumstances. The pin was bent and this increased the difficulty.

Appellee, who was on the north car of the south part of the train, descended to the west side of the car to make the coupling. He moved along the side of the car till the moment came for him to perfect the junction, and then, with his left foot on the outside of the rail and his right foot on the inside, endeavored to walk along with the moving cars after they had bumped together, and to force the crooked pin into its place. He claims that his left foot was caught under one of the ties, that his right foot went into the cattle-guard, that it was impossible to release his left foot in time for the withdrawal of the right, that the moving car struck him in the back and threw him forward, that he turned over in his effort to extricate himself, and that his right leg was run over and crushed. On the trial

of the case two propositions were hotly contested, the first relating to the ·negligence of appellee, and the second to the negligence of appellant.

Appellee claimed that he was in the exercise of ordinary care for his safety, while appellant made the contrary claim. Appellee claimed that his left foot became caught under the tie and his right foot went into the cattle-guard, because of the condition of the track, which was not reasonably safe according to his contention, while appellant claimed that the track was in a reasonably safe condition. As to each of these propositions, the evidence was conflicting. In fact the case was a close one in every particular, and extreme care was required in instructing the jury as to the law.

The following is the first instruction given at appellee's request: "You are further instructed that the business of furnishing reasonably safe machinery, appliances, surroundings, etc., is upon the master; and while the master is not to be held liable for dangers and defects of which the servant is fully informed, yet the servant is authorized to rely upon the acts of the master in that respect, and is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings, etc., in the absence of notice that there is something wrong in that respect. And where the performance of the servant's duties requires constancy of attention to other matters, he has a right, and is entitled to assume that his master has furnished him with suitable and reasonably safe materials, machinery and surroundings, and relieved him, the servant, of investigation and inquiry in that regard."

This instruction might be a correct statement of the law in some cases, but in the case under consideration it was certainly calculated to mislead the jury.

Appellee had made at least thirty-six runs over this part of the road, and was charged, under the rules of the company, with the duty of informing himself as to the track on which he was to work, and as to the dangers incident to this part of the service. And yet this instruction practically told

the jury that appellee had a right to shut his eyes and re-fuse to inform himself as to the condition of the track and the nature of his surroundings, notwithstanding the fact that he may have had ample opportunity for investigation, or even for acquiring a true knowledge of the situation by ordinary observation without any effort at investigation. A switchman might indeed not be "*fully informed*" of cer-tain dangers and defects, and yet he might have such infor-mation as would put a reasonable man upon inquiry, or render an ordinarily prudent man cautious enough to avoid danger and injury under the circumstances. Yet this in-struction told the jury that the master was not liable for dangers and defects of which the servant was "*fully in-formed*," which amounted to a statement that the converse of the proposition was true, that is to say, that the master was liable even though the servant may have had such in-formation as would have put a reasonably prudent man on his guard, provided that information did not amount to *full information*, or, as the average juror would understand the language, to *absolute certainty.*

It may be also properly observed that the statement that the servant is under no primary obligation to investigate and test the fitness and safety of the machinery, surround-ings, etc., in the absence of notice of defects, is very good law in a proper case. This proposition is not applicable, however, to the case of one who has been in the employ-ment of his master for such a length of time as to require him, in the exercise of ordinary prudence, to take some notice of his surroundings.

A man can not decline to see, and then hold the master liable, excusing his own negligence by saying that he was under no primary obligation to investigate. We do not mean to intimate that such was actually the conduct of ap-pellee in this case, but simply to affirm that he can not excuse negligence, if guilty thereof, on this ground, and that the jury should not have been precluded by the instruction in question from passing freely upon this branch of the case.

In a case where the conflict of the evidence is so sharp as

it is here, the error in giving this instruction can not be said to be cured by the instructions given for appellant.

It is said in the argument, however, that the record and abstract do not "purport to set forth all the instructions asked or given," and that it is to be presumed that other instructions were given which cured the error in appellee's instruction.

The cases cited in support of this proposition are cases in which the record shows affirmatively that instructions given are not contained in the record. An inspection of the record before us discloses the fact that it contains three instructions given for appellee, and ten instructions given, and one refused on the other side. The statements of the record are such as to lead the mind to the conclusion that these are all of the instructions which the court was requested to give.

But if the rule which requires the record to show affirmatively that it contains all of the evidence is to be applied to the instructions, it is certain that well recognized exceptions modify the rule in the latter case.

In one case cited by appellee, Meyer v. Temme, 72 Ill. 574, it is held that, even if the record does not contain all of the given instructions, yet if instructions given and preserved in the record contain errors which could not have been cured by others, it would be proper to reverse because of the giving of such erroneous instructions.

This case is directly in point. The error in the giving of appellee's first instruction was not cured by instructions given, or which might be presumed to have been given, for appellant.

True enough is it that the instructions in a case must be considered as a single charge, and that, in many instances, an erroneous statement in one part of the charge may be cured or corrected by another part of the charge. But such is not the law under all circumstances.

Error in assuming a fact in issue is not cured by other instructions which assume that the question is still open. Bressler v. Schwertferger, 15 Bradw. 294. Such is the law also where the evidence is conflicting, and the balance is

doubtful. Town of Geneva v. Peterson et al., 21 Ill. App. 454. See, also, as clearly announcing the same doctrine the following cases decided by the Supreme Court: C. & A. R. R. Co. v. Murray, 62 Ill. 326; T., W. & W. Ry. Co. v. Lannon, 67 Ill. 68; Quinn v. Donovan, 85 Ill. 194; Wabash R. R. Co. v. Henks, 91 Ill. 406; W., St. L. & P. Ry. Co. v. Rector, 104 Ill. 296.

For the errors indicated the judgment is reversed and the cause is remanded.