[No. 7662.   Decided February 27, 1909.]

WILLIAM HOGG, *Appellant,* v. STANDARD LUMBER COMPANY, *Respondent.*[1]

MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—METHODS OF WORK—LOADING LOGS — EVIDENCE — SUFFICIENCY. There is not sufficient evidence of negligence in loading logs on a sled to entitle a teamster to recover for injuries sustained by reason of the slipping and falling of logs from the load, and a nonsuit is properly granted, where it appears that the fall was due to the fact that the front bob of the sled broke through the ice into a rut, causing the load to lurch and sway, that the logs were loaded and secured in the usual manner employed in that and other camps, that all such loads were more or less unsafe and that the teamster, a man of experience, had opportunity to observe the manner in

[1]Reported in 100 Pac. 151.

which the load was secured, but failed to do so; and there is no presumption of negligence from the fact that an accident happened in such a case.

EVIDENCE—OPINIONS OF EXPERTS—QUESTION FOR JURY. The opinion of experts is inadmissible to show that the method of loading logs on a sled was not proper and safe, that being an issue for the jury to determine from full details as to how the logs were loaded and the usual manner of loading in that and other camps in the same locality.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 30, 1908, in favor of the defendant by direction of the court, after a trial on the merits before a jury, in an action for injuries sustained by a teamster. Affirmed.

*S. P. Domer* and *Harris Baldwin,* for appellant.

*Danson & Williams,* for respondent.

CROW, J.—Action by William Hogg against the Standard Lumber Company, a corporation, to recover damages for personal injuries. One Hiram Hogg, father of the plaintiff, entered into a contract with the Standard Lumber Company to haul logs from certain timber land in Spokane county to defendant's sawmill, and in the performance of such contract employed the plaintiff, William Hogg, to drive one of the teams. The logs were loaded upon sleds by employees of the defendant. The plaintiff, by direction of the defendant's foreman, hitched his team to a loaded sled and started for the mill, about three miles distant. He alleged, that the logs were not properly loaded and secured so as to prevent them from slipping or falling; that the defendant knew of such defective loading; that, while he was riding on the load and driving his team, some of the logs slipped and fell, throwing him to the ground causing his injuries; that his only duty was to drive the team, and that the accident was caused by the defendant's negligence in loading the logs. On a jury trial, the plaintiff having rested, the defendant challenged the sufficiency of his evidence, and moved the court to withdraw the case from the jury. This motion being granted, final judgment was en-

tered in favor of the defendant. The plaintiff has appealed.

The appellant, by his first assignment of error, contends that the respondent's challenge to the sufficiency of the evidence should have been denied. The trial court, in sustaining the challenge, held (1) that the appellant had failed to produce evidence sufficient to show any negligence on the part of the respondent, and (2) that appellant had voluntarily assumed the risk of the dangers of the employment in which he was engaged. After a careful examination of the evidence, we conclude that these holdings should both be sustained, although we will only discuss the issue of respondent's alleged negligence.

Appellant at the date of the accident lacked but a few days of his majority. The undisputed evidence shows that he was a man in size, weight, strength, and experience; that he had cut logs, hauled logs, and worked in sawmills and lumber camps for the period of four years; that he had loaded logs and driven teams; that these logs were loaded upon sleds at a lumber camp by respondent's employees; that the appellant had ample opportunity to see and observe the manner in which the particular load causing his injury had been secured upon the sled; that in driving to the mill the front runner of his sled broke through some ice, and fell into a deep rut or hole; that the load was thereby caused to sway, and that some logs slipped off the sled, striking appellant. He testified that he did not examine or look at the load of logs to ascertain its condition, before hitching his team to the sled. He assumed that it was properly secured. One Inman, who asked permission to ride with him, testified that appellant stopped his horses and, in substance, said that he (Inman) might climb on if he was not afraid, but that he (appellant) was a little bit afraid. One Alford, appellant's witness, in response to questions propounded by his own counsel, testified as follows:

"Q. Would you consider a load of the size of that, that the plaintiff was hauling, loaded in the manner that you

have illustrated here, to be loaded safely for hauling over the road that that load was to be hauled over? A. You mean that load? Q. Yes. Considering the condition of the logs, the ice and the snow that was on them. A. Well, they were as safe as any logs, load of logs, but didn't consider any of them safe. Q. Don't consider any load safe? A. No load safe. Q. You would consider what? A. I wouldn't consider any load of logs safe. Q. Loaded as this was loaded? A. As any of them were loaded. Q. Why? A. Well, because they aren't safe. Q. Why? A. Well, chain liable to break any time on any load with a big load of logs. Q. Because there were not enough chains on them, is that the reason they were not safe? A. I don't know that is the reason. Probably some of the chains would break, sometimes have one roll off; sometimes the corner binds come off; sometimes the corner binds break."

Mr. Inman, who, as above stated, was riding with the appellant at the time of the accident, further testified as follows:

"Q. How did the logs happen to fall off the load—you say it gave? A. It broke through the ice in the wagon rut, and the front bob of the sled broke through, and it gave a kind of shake, and when the hind bob came along dropped in the same hole, why the load when it dropped off, the load dropped down it gave, and the logs rolled off. . . . Q. How fast was the team going; that is, was it walking or trotting? A. Well, it was in a trot, I think, to the best of my knowledge. Q. Now, did you notice how far the bob dropped into the ground at the rut, how deep it was? A. Six or eight inches, I imagine, something like that. Q. You say that caused the load to sway or swing. A. When it broke through, you know; it's natural when it would break through to drop, that would give it a kind of lurch, kind of twist, and when the front bob dropped through it gave a kind of twist that way, and when the hind one came along give it the same motion; then it gave way. Q. Now, then, as I understand you, when the hind bob struck into the rut it caused the logs to be thrown off? A. Yes."

Other witnesses testified that the logs were loaded and secured in the manner usually employed in that and other

lumber camps. Appellant has failed to direct our attention to any evidence showing any specific negligence in loading the logs, or the particular defect in loading on which he relies. His sole contention seems to be that negligence is shown by the happening of the accident. In his opening brief, stating the substance of his argument, he says: "The mere fact that the appellant was injured, under the circumstances in which he was injured, is *prima facie* evidence of negligence in the respondent." Considering the relations of the parties, the character of the employment in which the appellant was engaged, and all the circumstances as disclosed by the evidence, no such doctrine can be here applied. The mere fact that the appellant was injured does not of itself warrant a finding of negligence on the part of respondent.

Appellant further contends that the trial court erred in excluding certain testimony of expert witnesses, tendered by him. His witnesses were permitted to testify fully as to the manner in which the particular logs were actually loaded and secured upon the sled, and also as to the usual manner of loading them employed in respondent's lumber camp and other camps in the same locality. But witnesses whom he offered as experts were not permitted to testify that in their opinion the particular manner in which these logs were loaded was or was not proper and reasonably safe, that being regarded by the trial court as an issue to be determined by the jury in the event of evidence sufficient to show negligence being offered for their consideration. We find no prejudicial error in the ruling.

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, FULLERTON, and MOUNT, JJ., concur.

CHADWICK and GOSE, JJ., took no part.