[No. 8048. Department Two. January 8, 1910.]

## C. A. GODDARD, *Respondent*, v. INTERSTATE TELEPHONE COMPANY, LIMITED, *Appellant*.[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—APPARENT DANGERS—DUTY OF LINEMAN TO OBSERVE DEFECTS. An experienced lineman employed in the capacity of a "troubleman" to remedy all kinds of trouble on the line, and in charge of the operating department out on the line, who was injured by a fall from a telephone pole by reason of a bent iron step which caused his foot to slip off, is guilty of contributory negligence which was the proximate cause of his injury, and it is error to refuse a nonsuit, where it appears from his testimony that the right way to ascend a pole is to use the hands and feet on each step in the ascent, the accident occurred in the open on a clear day, the defect was apparent at a glance, and the plaintiff made no inspection and did not observe the defect even in grasping it in his hand or in passing, and he was in a better position to see it than any one else, and where it was established that it was his duty to inspect the construction and repair, and correct or report if anything was wrong.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 2, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a lineman in a fall from a telephone pole. Reversed.

*Danson & Williams*, for appellant.

*Robertson, Miller & Rosenhaupt*, for respondent.

DUNBAR, J.—Respondent was a lineman and a "trouble" man for appellant company. He fell from a telephone pole, in Sand Point, Idaho, on the morning of December 27, 1907. He claims that the cause of his fall was a bent step on the pole. Poles are provided with heavy iron steps on either side, running to the top, on which men climb and descend. These iron steps have an upright prong at the end, making an effectual guard to prevent the feet slipping off. The step in question is an exhibit in the case here, and shows that it

[1]Reported in 106 Pac. 188.

was slightly bent so that one climbing up the pole with a broad shoe might slip off by reason of the prong at the end not being at a right angle with the pole. There was some claim that the pin or step turned in the pole, but an examination of the step renders that claim unwarrantable, for the reason that, if it was bent to the extent claimed by the respondent, it would have been impossible for it to have turned in the wood, the bend being mostly inside of the wood and creating a shoulder which would come against the wood of the pole and prevent it from turning. There is also considerable testimony as to the manner in which the step was driven into the pole, it being claimed that the proper way was to bore the wood first and then drive the step in, and that an attempt to drive it in without first boring was probably the cause of the bend in the step. But with the view we take of the duty of the respondent in the premises, this is not material.

The accident occurred between nine and ten o'clock in the morning on the 27th day of December, 1907, which the respondent says was a clear day. The respondent, at the time of the accident, was about thirty-one years of age, had been engaged in this line of work for about ten years, and had been in the employ of the appellant for about five months previous to the accident. About three weeks of this time he was employed in the capacity of assistant foreman, and his duties generally consisted of linemen's work, stringing wires, and putting in cables. He also had had charge of the operating department out upon the line. The duty of the trouble man was to repair all kinds of trouble—anything he might find, and to make repairs and put in order anything that should be found wrong on the line. Respondent had worked as trouble man a little over three weeks immediately preceding this accident. These pins or iron steps are placed in the sides of the poles so that the steps on each side are about three feet apart, and alternated on each side so as to make an eighteen-inch stride. The step from which re-

spondent fell was the topmost one on the right hand side of the pole. He had ascended the pole for the purpose of repairing some wires. He claims that he did not notice the step when he went up, and did not know that it was bent or twisted in any way. Upon trial of the cause, he obtained a judgment for $1,500, from which judgment this appeal is taken.

The doctrine that it is the duty of the master to furnish the servant with a reasonably safe place in which to work, with the correlative doctrine that it is the duty of the servant to exercise reasonable care in the performance of the work to avoid injury to himself, are so well established by the decisions of this and other courts that it is not necessary to elaborate them. The law is settled. The difficulty is in applying it to different groups of facts. The plaintiff cannot recover when his own negligence contributes proximately to his injury. The pertinent question in a given case is, did it so contribute. He assumes all ordinary risks incident to his employment and all dangers which are open and apparent. Again, the pertinent question is, were the dangers open and apparent, and ought they to have been discovered by the exercise of reasonable caution. What constitutes a safe place, what dangers are apparent, and what constitutes the exercise of reasonable caution, depend upon facts so multifarious and frequently susceptible of so many different shades of interpretation and meaning, that it is in many instances exceedingly difficult to justly determine the legal standing of a particular case and to apply to it the proper rule. For this reason it will be of no benefit to analyze the many different cases cited by learned counsel on both sides, for the facts of this case may be easily distinguished from the facts in any of the cases cited.

Conceding, for the purpose of this decision, that the pin or step in question rendered the ascent of the pole dangerous, and conceding, further, that the ascent and step were the cause of respondent's fall, we are yet compelled to decide

that he was guilty of negligence in not noticing the condition of the step when he ascended the pole, and that such negligence was the proximate cause of his injury.  While he would not admit in so many words that he took hold of this particular step with his hand, he testified that the right way to ascend the pole would be to use the hands and feet on each step in the ascent, and it will be presumed that this was the manner of his ascent.  In this case everything was out in the open.  It was the middle of the forenoon, on a clear day. The pole stood out in bold relief, where a glance at it would show the defect if it was so bad that it would have caused the accident.  It was respondent's duty before making so perilous an ascent to exercise his senses in an inspection of the pole that he was about to climb—at least, a superficial inspection.  But he not only did not look before starting up, but did not observe it in passing over, even when he was using it when he passed to aid himself in the ascension of the pole by grasping it in his hand, thus having opportunity of inspection both by sight and touch.  But even if he did not grasp it with his hand, he climbed up to it and passed it, with it right in front of his eyes.  He admitted that he was in a better position to view it than any one else could be.  It must occur to any one looking at a telephone pole that a defect of this kind could be seen at a glance from the ground, and if observable by one not accustomed to looking at such poles, how much more apparent it ought to be to one who has had years of experience in climbing the poles and working around them, and whose safety of life and limb depends upon the pole being properly furnished.

This is not the case where there is an absolute duty of inspection delegated by the master to a special agent who, by reason of his skill, is better calculated to notice defects than the servant who is ignorant of conditions and has a right to rely implicitly upon a proper inspection by the master or his agent.  The testimony of Charles McNeil, the local manager, was to the effect that there was no special inspector,

and that it was understood by the linemen, the trouble men, and every one connected with the operation of the line, that it was their duty to notice the condition of the construction, and if there was anything wrong, to either correct it or repair it; that it was the special duty of the trouble man to notice and correct or repair trouble of any kind, and that the respondent was the trouble man at the time of the accident and had been for something over two weeks. This testimony is not really controverted by the respondent; for while he would not say that it was his duty to inspect, his testimony as a whole showed that it was, and could not be reasonably interpreted in any other way. It is also well established by the verdict of the jury, in answer to special interrogatories, that the company did not have any one in its employ whose duty it was to inspect the lines, poles, and equipment for the purpose of discovering defects and repairing the same. The respondent, being a man of ripe experience, having been an assistant foreman, and, according to his own testimony, having at the time of the accident charge of the operating department out upon the line, it was his duty to notice the defective step, and his failure to do so being the proximate cause of his injury, he cannot recover.

The judgment is reversed with instructions to the trial court to dismiss the action.

RUDKIN, C. J., CROW, PARKER, and MOUNT, JJ., concur.