[No. 8317. Department One. February 4, 1910.]

WALTER E. SHORE, *Appellant*, v. SPOKANE & INLAND
EMPIRE RAILROAD COMPANY, *Respondent*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—KNOWN DANGERS.
—EVIDENCE—SUFFICIENCY.  A member of a gang on a tower car put-
ting up a trolly wire, who admitted that he was familiar with the
work and appreciated all the dangers, assumes the risks and a non-
suit is proper, where it appears that in the hurry to get out of
the way of a passenger train, two mast arms were skipped, leaving
three hundred feet of wire hanging from the spool, which was liable
to slip at any time, that it slipped, causing plaintiff to lose his
balance and involuntarily seize a live wire about three feet dis-
tant, which severely burned the plaintiff when the other wire sagged
to the ground.

SAME—CAUSE OF ACCIDENT.  In such a case it is immaterial
whether or not the foreman negligently directed the man at the
brake on the spool to slack the wire, where the uncontradicted
testimony showed that any such order, if given, was not obeyed.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered December 19, 1908, upon
granting a nonsuit at the close of plaintiff's case, dismissing
an action for personal injuries sustained by an employee
engaged in putting up a trolley wire.  Affirmed.

*Samuel R. Stern*, for appellant, cited:  *Cumberland Tele-
phone & Telegraph Co. v. Graves' Adm'x*, 31 Ky. Law 972,
104 S. W. 356; *Burns v. Delaware & Attell Telegraph &
Telephone Co.*, 70 N. J. L. 745, 59 Atl. 220, 592, 67 L. R. A.
956; *Drown v. New England Telephone & Telegraph Co.
etc.*, 81 Vt. 358, 70 Atl. 599; *Co-Operant Tel. Co. v. St.
Clair*, 168 Fed. 645; *Hausler v. Commonwealth Elec. Co.*,
240 Ill. 201, 88 N. E. 561; *Zentner v. Oshkosh Gas Light
Co.*, 126 Wis. 196, 105 N. W. 911; *Martin v. Des Moines
Edison Light Co.*, 131 Iowa 724, 106 N. W. 359; *Western
Union Tel. Co. v. McMullen*, 58 N. J. L. 155, 33 Atl. 384,
32 L. R. A. 351, and note; *Choctaw etc. R. Co. v. Jones*,

[1]Reported in 106 Pac. 753.

77 Ark. 367, 92 S. W. 244, 4 L. R. A. (N. S.) 837; *Myhan v. Louisiana Elec. Light & Power Co.*, 41 La. Ann. 964, 6 South. 799, 17 Am. St. 436, 7 L. R. A. 172; *Passage v. Stimson Mill Co.*, 52 Wash. 661, 101 Pac. 239; *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765; *Olson v. Erickson*, 53 Wash. 458, 102 Pac. 400; *Jackson v. Danaher Lumber Co.*, 53 Wash. 596, 102 Pac. 416; *Shannon v. Consolidated Tiger & Poorman Min. Co.*, 24 Wash. 119, 64 Pac. 169; *Nelson v. Willey S. S. & Nav. Co.*, 26 Wash. 548, 67 Pac. 237; *Eidner v. Three Lakes Lumber Co.*, 45 Wash. 323, 88 Pac. 326; *Larsen v. Covington Lumber Co.*, 53 Wash. 146, 101 Pac. 717; *Cleary v. General Contracting Co.*, 53 Wash. 254, 101 Pac. 888; *Harris v. Washington Portland Cement Co.*, 49 Wash. 345, 95 Pac. 84; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191.  The negligence of the foreman entitled the plaintiff to recover. *Newcomb v. Puget Sound and Queen City Boiler Works*, 54 Wash. 419, 103 Pac. 456; *Sanquist v. Independent Telephone Co.*, 38 Wash. 313, 80 Pac. 539; *Williams v. Ballard Lumber Co.*, 41 Wash. 338, 83 Pac. 323; *Howland v. Standard Milling & Logging Co.*, 50 Wash. 34, 96 Pac. 686; *Cook v. Chehalis River Lumber Co.*, 48 Wash. 619, 94 Pac. 189; *Duskey v. Green Lake Shingle Co.*, 51 Wash. 145, 98 Pac. 99; *LaBee v. Sultan Logging Co.*, 51 Wash. 81, 97 Pac. 1104; *Withiam v. Tenino Stone Quarries*, 48 Wash. 127, 92 Pac. 900; Joyce, Electrical Law, § 665; Thompson, Negligence, § 4630; Thompson, Electricity, §§ 89-92, 93; *Ball v. Megrath*, 43 Wash. 107, 86 Pac. 382; *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 546, 82 Pac. 114; *Woodson v. Prescott* (Ark.), 121 S. W. 273; *Barto v. Iowa Tel. Co.*, 126 Iowa 241, 101 N. W. 876, 106 Am. St. 347.

*Graves, Kizer & Graves*, for respondent, in addition to citing Washington cases, contended, *inter alia*, that the servant assumes the risks which are as well known to him as to the master, and when both are equally competent to judge.

*Thayer v. St. Louis etc. R. Co.*, 22 Ind. 26, 85 Am. Dec. 409; *Olson v. McMullen*, 34 Minn. 94; *Malone v. Hawley*, 46 Cal. 409; *Weeklund v. Southern Oregon R. Co.*, 20 Ore. 591, 27 Pac. 260; *Gulf etc. R. Co. v. Jackson*, 65 Fed. 48; *Johnson v. Oakes*, 70 Fed. 566; *Jenney Elec. Light & Power Co. v. Murphy*, 115 Ind. 566, 18 N. E. 30; *Salem Bedford Stone Co. v. Hobbs*, 11 Ind. App. 27; *Morbach v. Home Min. Co.*, 53 Kan. 731, 37 Pac. 122; *Carey v. Boston & M. R. R. Co.*, 158 Mass. 228, 33 N. E. 512; *Davis v. Detroit etc. R. Co.*, 20 Mich. 105, 4 Am. Rep. 364; *Watson v. Kansas & T. Coal Co.*, 52 Mo. App. 366; *Thorn v. New York City Ice Co.*, 46 Hun 497; *Nashville etc. R. Co. v. Handman*, 81 Tenn. 423; *Galveston etc. R. Co. v. Lempe*, 59 Tex. 19; *Bonnet v. Galveston etc. R. Co.* (Tex. Civ. App.), 31 S. W. 525; *Thompson v. Chicago etc. R. Co.*, 14 Fed. 564; *Rietman v. Stolte*, 120 Ind. 314, 22 N. E. 304; *Carlson v. Sioux Falls Water Co.*, 5 S. D. 402; *Hazlehurst v. Brunswick Lumber Co.*, 94 Ga. 535, 19 S. E. 756; *Stobba v. Fitzsimmons & Connell Co.*, 58 Ill. App. 427; *Hoosier Stone Co. v. McCain*, 133 Ind. 231, 31 N. E. 956; *Wormell v. Maine Cent. R. Co.*, 79 Me. 397, 10 Atl. 49, 1 Am. St. 321; *Claybaugh v. Kansas City etc. R. Co.*, 56 Mo. App. 630; *Brown v. Oregon Lumber Co.*, 24 Ore. 315, 33 Pac. 557. A servant's opportunity to acquire knowledge is the legal equivalent of actual knowledge. *Motey v. Pickle Marble & Granite Co.*, 74 Fed. 155; *Thompson's Adm'r v. Chicago, M. & St. P. R. Co.*, 18 Fed. 239; *St. Louis, Iron Mountain & Southern R. Co. v. Higgins*, 53 Ark. 458; *Chicago etc. R. Co. v. Simmons*, 11 Ill. App. 147; *Taylor v. Carew Mfg. Co.*, 140 Mass. 150, 3 N. E. 21; *McDugan v. New York Cent. etc. R. Co.*, 10 Misc. Rep. 336, 31 N. Y. Supp. 135; *Watson v. Houston etc. R. Co.*, 58 Tex. 434; *Haley v. Jump River Lumber Co.*, 81 Wis. 412, 51 N. W. 321, 956. Recovery cannot be had where the dangers are patent to common observation and should have been seen by the employee had he exercised ordinary prudence. *Linton Coal & Mining Co. v. Persons*, 15

Ind. App. 69; *Lumley v. Caswell,* 47 Iowa 159; *Brossman v. Lehigh Val. R. Co.,* 113 Pa. St. 490, 6 Atl. 226, 57 Am. Rep. 479; *Austin v. Boston & M. R. Co.,* 164 Mass. 282, 41 N. E. 288; *McGrath v. Walsh,* 4 N. Y. Supp. 705; *Gulf etc. R. Co. v. Hohl* (Tex.), 29 S. W. 1131; *Bertha Zinc Co. v. Martin's Adm'r,* 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999; *Langlois v. Maine Cent. R. Co.,* 84 Me. 161, 24 Atl. 804; *Pingree v. Leyland,* 135 Mass. 398; *Bengston v. Chicago, St. P. & M. R. Co.,* 47 Minn. 486, 50 N. W. 531.

Rudkin, C. J.,—This action was instituted to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant. The court granted a nonsuit at the close of the plaintiff's testimony, and from the judgment of nonsuit, this appeal is prosecuted.

The following statement will sufficiently disclose the nature of the work in which the appellant was engaged, and the manner in which the injury was inflicted. At the time of receiving the injury complained of, the appellant was engaged with other employees of the respondent in constructing the overhead trolly system for the electric railroad owned and operated by the respondent. The poles which supported the wires stood at one side of the road, with iron arms, called mast arms, projecting from the poles over the track, to which the wires were fastened. A messenger wire was first attached to the mast arm, and a few inches below this depended the trolly wire, which was fastened to the messenger wire by iron clasps. In stringing the wires a tower of sufficient height to bring the workmen in proper working proximity to the mast arm was constructed on one end of a flat car, and the spools containing the messenger and trolly wires were placed at the other end, near the floor of the car, with an iron rod or bar through the holes in the spools so as to permit the spools to revolve. Each of these spools would weigh close to a ton when filled with wire. A couple of reels were placed at or near the top of the tower

over which the wires were drawn as they came from the spools below. The spool end of the car was placed in front, or toward the track to be strung. The wires were drawn from the spools over the reels at the top of the tower and fastened to a pole or mast arm. The car was then pulled forward by an engine in the direction in which the work was progressing, and as the car advanced the wires unrolled from the spools and passed over the reels at the top of the tower. The end of a board or plank was placed under each spool, and a man pressed down on the other end. This acted as a brake to prevent the wires from unrolling too freely. As the spools grew lighter the brake would not work so effectively, and the spools would sometimes slip. The poles supporting the mast arms were set 100 feet apart, and as each mast arm was reached the wires were attached to it temporarily until another crew could follow after and put the wires in place, fastening them permanently. It was customary for three men to handle each wire, so that if both wires were strung at the same time there would be six men at work on the tower, but when the wires were strung singly, as was the case at the time of this accident, only three men were employed.

The gang to which the appellant was assigned was engaged in stringing wires on the siding at Blackwell Station. The tower car and engine blocked the main line, and the gang was in a hurry to get out of the way of an approaching passenger train. For that reason, instead of fastening the wires to each mast arm, they skipped two and were about to fasten the wires to a third. There was thus 300 feet of ½ or ⅝ inch wire hanging over the tower without a tie. The appellant raised the wire over his shoulder to the mast arm for the purpose of tying it, as he did so the wire or spool slipped, the appellant lost his balance, and in an effort to save himself involuntarily seized a live wire carrying 6,600 volts, about three feet distant from him. At the same instant, the wire he was stringing sagged to the ground behind

the car, thus forming a circuit which burned and injured the appellant most severely.

Under the foregoing facts, it seems to us there can be no recovery in this case, under well-established principles of law. Numerous grounds of negligence are charged by the appellant, but these with one exception relate to the general manner of doing the work, which was open and apparent to all. The exception to this general statement was an alleged direction given by the foreman to the man at the brake to slack the wire while the appellant was in a dangerous position. Such a direction was testified to by a witness who was on a pole about 100 feet distant from the foreman and the appellant at the time of the accident. But the appellant himself, and other of his witnesses who were on the tower with the foreman at the time, heard no such order or direction, and if we should assume that the testimony of this witness was sufficient to carry the case to the jury on that issue, the fact remains that the uncontradicted testimony shows that the order was not obeyed if given; so that, even though the order was negligently given, it was not carried into execution and was not the cause of the accident.

As stated above, the other grounds of negligence charged relate to the means or methods employed in stringing the wires, such as insufficiency of men, failure to tie the wire to every mast arm, the sagging of the wire, insufficiency of tools and appliances, the hurrying of the work, etc. All of these matters were as well or better known to the servant than to the master. The appellant candidly admitted that he was thoroughly familiar with the work and with the manner of doing it, and fully appreciated all the dangers incident to the hazardous employment in which he was engaged. He knew that if he came in contact with the two wires while the wire he was stringing was grounded the result would be disastrous if not fatal to him. His injuries resulted from dangers incident to his employment, which he clearly assumed. It would be idle to cite decisions from this and other courts

to that effect, but the rule is clearly stated in the following cases: *Week v. Freemont Mill Co.*, 3 Wash. 629, 29 Pac. 215; *Schulz v. Johnson*, 7 Wash. 403, 35 Pac. 130; *Olson v. McMurray Cedar Lumber Co.*, 9 Wash. 500, 37 Pac. 679; *Bullivant v. Spokane*, 14 Wash. 577, 45 Pac. 42; *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Brown v. Tabor Mill Co.*, 22 Wash. 317, 60 Pac. 1126; *Danuser v. Seller & Co.*, 24 Wash. 565, 64 Pac. 783; *Grout v. Tacoma Eastern R. Co.*, 33 Wash. 524, 74 Pac. 665; *Bier v. Hosford*, 35 Wash. 544, 77 Pac. 867; *Ford v. Heffernan Engine Works*, 48 Wash. 315, 93 Pac. 417; *Brown v. Oregon Lumber Co.*, 24 Ore. 315, 33 Pac. 557.

Counsel for respondent express the hope that the American commonwealths will at an early day become sufficiently enlightened to enact rational and just laws prescribing the liability of the master to the servant for personal injuries suffered by the servant in the· course of his employment in cases such as this—laws which will be just and certain in their operation to both the servant and the master. Such a consummation is devoutly to be hoped for, but until the change is wrought the rights of litigants and the duties of courts are measured by existing laws. We have no power of dispensation, and the property of others is not ours to dispose of at will. The judgment must therefore be affirmed.

Fullerton, Gose, Chadwick, and Morris, JJ., concur.