## DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 8742. Department One. September 3, 1910.]

### L. C. DEATON, *Respondent*, v. ROBERT ABRAMS *et al.*, *Appellants.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—OBVIOUS DANGERS. An experienced man, capable of and running a woodyard in the absence of the owner, assumes the risks of injury from setting up and operating a saw near a pile of four foot slabs eighteen feet high, which was so dangerously high that any man ought to know that it was likely to fall at any time, according to the testimony of the plaintiff and his witnesses (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for King county, Albertson, J., entered December 22, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a sawyer employed in a woodyard. Reversed.

*W. H. Beatty* and *Hastings & Stedman*, for appellants.

*Bo Sweeney*, for respondent.

CHADWICK, J.—Defendants were the owners of a woodyard located on the shores of Lake Union, where they were engaged in converting the mill wood coming from the Edgewater Lumber Company into stove lengths. In the yard at the time of the injury complained of there were two long ricks of wood, each from sixty to seventy-five feet long. The

[1]Reported in 110 Pac. 615.

one being next to a barbed wire fence skirting the railroad right of way was, according to the evidence of plaintiff, eighteen feet high, and in the judgment of his other witnesses, sixteen to eighteen feet high. The other paralleled the first pile at a distance of about two feet, and according to the testimony of at least one witness, these piles in some degree supported each other. The second pile was about half the height of the first pile. The wood had been cut into four-foot lengths at the sawmill and had been hauled by defendants' teams and piled more than a year before the accident, during which time plaintiff had been in the employ of the defendants. During a part of the time and at and before the accident complained of, plaintiff was the sawyer having charge of the saw, and in the absence of Richard Abrams, one of the defendants, seemed to have charge of the yard and the men, although he testified that he gave no orders unless directed by Mr. Abrams. The saw, which was operated by a gasoline engine, was moved from one place to another about the yard.

On the evening before the accident occurred, the crew was engaged in sawing wood in the dry kiln. Having used up the dry wood, plaintiff was directed to move the saw out into the yard and saw off of the lower of the two piles hereinbefore referred to. The saw was moved out into the yard and placed at a point, according to plaintiff's evidence, about twenty feet from the higher pile. Other witnesses fixed the distance at about fifteen feet, and it is more likely that they are correct in their judgment than is plaintiff. The crew began sawing the first thing in the morning, plaintiff being at the platform and propelling the carriage. They had been at work about fifteen or twenty minutes when the high pile fell its full length. Some of the wood struck the first bearer or passer, knocking him down and against plaintiff so that plaintiff fell over the carriage and onto the saw, receiving the injuries of which he complains. Plaintiff began

an action in the court below, and from a judgment in his favor, defendants have appealed.

Two elements of negligence were set up in the pleadings. The incompetence of a fellow servant, and negligence in piling the wood to an extreme height upon sloping ground. The first ground of negligence was practically abandoned on the trial, leaving only the question, Did respondent assume the risk of his employment?

No defect in piling is shown except in the height of the pile. In passing upon a motion for a nonsuit made during the progress of the trial, the judge who tried the case said:

"Now, the only evidence of negligence with respect to the piling of this slab wood is as to the height of the pile as counsel has stated. I do not believe it will be contended that the evidence shows any negligence with respect to the pile of wood unless the height of the pile constituted negligence in the piling of it. Now, if the appellants were negligent in piling the wood in that way, they would not be liable if the plaintiff appreciates the fact that it was piled too high and the danger incident to the piling of it in that way. Whether he assumed the risk is a question of fact. Reasonable minds may differ about it. It might be that one man from his ignorance or inexperience would not appreciate the danger to be apprehended from a pile of slabs that was piled higher than it ought to be."

The trial judge then left the question to the jury, saying:

"If a man goes to work in a place of open and manifest danger, if he knows the danger attendant upon his employment, or ought to know it in the exercise of reasonable care for his own safety, if he appreciates the risks of danger in his position, or ought to appreciate them in the exercise of ordinary care and observation on his part, he cannot recover even though he may be injured while at work. Where the employer and the employee are on a plane of equal information, then the employer cannot be held liable for accidents that result from the open and manifest danger. If there are dangers connected with an employment which are known to the employer and not to the employee, which he does not observe or would not see in the exercise of ordinary care,

it is the duty of the employer to inform the employee of these unseen dangers—dangers that are not patent and visible.

"So with respect to this defense of assumption of risk, it is for you to inquire from the evidence in this case in the first place whether this rick of slabs was negligently constructed, whether it was built unreasonably high, or unreasonably unsafe, and whether, if so, the plaintiff by reason of his information and experience was aware of the dangers that surrounded him and went to work with knowledge and appreciation of these dangers, or whether he ought to have known about it in the exercise of ordinary care. Notwithstanding the negligence and the danger, if the plaintiff himself knew of it and appreciated it, or ought to have done so, and went to work under those circumstances, under the law he would be held to an assumption of the risk and he could not recover."

We think there was no question for the jury. Respondent was neither ignorant nor inexperienced. He had worked about woodyards for four or five years, and in this particular woodyard for more than one year. In the absence of Abrams he was capable of running the yard, and did so. He knew all the conditions, not only the physical conditions, but those attending his employment. He knew that the wood was piled dangerously high. He says:

"Q. I will ask you, now, Mr. Deaton, is it not a fact that it is dangerous to pile mill wood eighteen feet high? A. Certainly it is. Q. It is? A. Yes, sir. Q. Any man ought to know that, oughtn't he, that it is dangerous to pile it that high? A. That is pretty high—eighteen feet high is pretty high. Q. Would you say that any man ought to know that was too high to pile wood? A. Yes, sir, it is too high."

With this his witnesses agree. There are some things which must be charged to the common knowledge of all men. That a pile of wood four feet wide and eighteen feet high is obviously dangerous and that it might fall at any time is apparent to any one in possession of his faculties. As said in *Goddard v. Interstate Telephone Co.*, 56 Wash. 536, 106 Pac. 188: "In this case everything was out in the open."

There were no hidden defects, and no knowledge was withheld. In *Soderberg v. Wells*, 57 Wash. 281, 106 Pac. 751, the following rules from the courts of other states were adopted by this court:

"In discussing the safe-place doctrine, in *Borden v. Daisy Roller Mill Co.*, 98 Wis. 407, 74 N. W. 91, 67 Am. St. 816, the court said: 'In the discussion and decision of this case the rule has been kept clearly in mind that a servant is not obliged to search for defects in instrumentalities furnished for his use, but may rely on the duty of the master to see that they are reasonably safe; yet such rule does not militate at all against that other rule, just as well settled in the law of negligence, that the master may rely on the duty of the servant to observe all defects and dangers which reasonable attention to the work in hand will generally disclose to a person of ordinary intelligence and experience in such work.' In *Illinois Cent. R. Co. v. Sanders*, 58 Ill. App. 117, the court said: 'A man cannot decline to see, and then hold the master liable, excusing his own negligence by saying that he was under no primary obligation to investigate.' In *Evansville & T. H. R. Co. v. Duel*, 134 Ind. 156, 33 N. E. 355, the court said: 'While the employe may repose confidence in the prudent and cautious adherence to duty by the employer, yet, he may not repose that blind confidence in the performance of the employer's duty which fails to observe the patent defects which an ordinary observation of the employe's duty would readily disclose.' In *Chesson v. John L. Roper Lumber Co.*, 118 N. C. 59, 23 S. E. 925, the court said: 'The servant is culpable if he fail to discover such a defect as would have been apparent, without a thorough examination, if he had used ordinary diligence to discover it.' "

These rules are in entire harmony with the former decisions of this court. See, *Shore v. Spokane & Inland Empire R. Co.*, 57 Wash. 212, 106 Pac. 753, where the authorities are collected. To which may be added: *Hoseth v. Preston Mill Co.*, 49 Wash. 682, 96 Pac. 423; *Hogg v. Standard Lumber Co.*, 52 Wash. 8, 100 Pac. 151; *Nordstrom v. Spokane & Inland Empire R. Co.*, 55 Wash. 521, 104 Pac. 809;

*Anderson v. Columbia Imp. Co.,* 41 Wash. 83, 82 Pac. 1037, 2 L. R. A. (N. S.) 840; *Vianello v. Washington Iron Works Co.,* 55 Wash. 552, 104 Pac. 784.

In the latter case the court said:

"While it is the duty of the master to warn his employees of dangers with which they are surrounded, especially when they are ignorant thereof and such ignorance is known to the master, it would be difficult to assume that an employee who had been engaged as the respondent had been for the period of six months, did not have ample opportunity for observing all apparent dangers with which he was surrounded, or that he did not observe the same, and that the master should warn him. . . . "

The consensus of these decisions is, that where the danger is alike open and obvious to the servant as well as the master, both are upon an equality, and the master is not liable for an injury resulting from a danger incident to the employment.

Respondent relies upon the case of *Zintek v. Stimson Mill Co.,* reported in 6 Wash. 178, 32 Pac. 997, 33 Pac. 1055, and in 9 Wash. 395, 37 Pac. 340. These cases are not in point. In neither of them was the defense of assumption of risk set up. In the first report of the case the only question before the court was the question of fellow servant and contributory negligence, where the fact was that the lumber which fell upon and killed Zintek was negligently piled. In the second report it is said that there was no testimony whatever to show that Zintek had any knowledge as to the manner in which the lumber had been piled, or anything to call his attention to the defective condition of the foundation of the pile of lumber.

We have not overlooked the argument made in the brief (although it may be questioned whether the issue is raised by the pleadings) that respondent was directed to work at the particular place the saw was set and that he did not know the danger and that the employer did, and is therefore liable. We think the testimony will hardly bear out this theory. It is true that a general direction was given to go out and saw

off of the smaller rick, but there is no testimony to show that Abrams directed this, or that it was necessary to put the saw in a place of danger. On the other hand, the saw was set about twenty feet from the high pile to meet the convenience of the crew of which he was the sawyer, showing that the accident resulted through an error of judgment attending a mere detail of the work, and that it would be unjust to charge any of the parties with the anticipation of danger to life or limb, for they had assumed what would appear to be a reasonably safe place to work.

For these reasons the judgment of the lower court is reversed, and the cause remanded with instructions to enter a judgment of dismissal.

RUDKIN, C. J., MORRIS, and GOSE, JJ., concur.

FULLERTON, J. (dissenting)—I think the evidence justified the verdict, I therefore dissent from the judgment ordered.