[No. 9882.   Department One.   November 4, 1911.]

RICHARD REID MILLER, *by his Guardian etc., Respondent,*

v. PACIFIC COAST CONDENSED MILK COMPANY,

*Appellant.*[1]

MASTER AND SERVANT—INJURIES—ASSUMPTION OF RISKS—ASSURANCE OF SAFETY—EVIDENCE—SUFFICIENCY. Where the plaintiff, who was inexperienced in the erection of derricks, had just ascended and descended a derrick gin-pole, after being assured of its safety, and again ascended the pole upon the order of the defendant's superintendent who meanwhile had negligently changed one of the guy ropes without the plaintiff's knowledge, he did not assume the risk of the fall of the pole due to the change in the guy ropes, as he had a right to rely on the statement that it was safe.

PARENT AND CHILD—ACTION FOR INJURIES—EMANCIPATION—PLEADING AND PROOF—ADMISSIBILITY OF EVIDENCE. In an action for personal injuries brought by a minor by his guardian *ad litem,* alleging

[1]Reported in 118 Pac. 627.

loss of wages, and hospital and doctor's fees, which allegations were not moved against, the defendant is not taken by surprise by proof of emancipation, and cannot object to recovery for loss of wages and expenses incurred.

DAMAGES—EXCESSIVE DAMAGES—PERSONAL INJURIES.  A verdict for $5,000 for personal injuries is not excessive, where the plaintiff, twenty years of age, strong, healthy and active, received a terrible fall, was rendered unconscious for four days, partial deafness and facial paralysis resulted, and loss of health and strength will remain through life.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 19, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee through the falling of a gin-pole.  Affirmed.

*Peters & Powell*, for appellant.

*Tucker & Hyland* and *Robert C. Saunders*, for respondent.

MOUNT, J.—The plaintiff in this case was injured by the fall of a pole or timber upon which he was working.  On account of his injury, he recovered a judgment in the sum of $5,000 against the defendant, who has appealed.

It appears that, in the month of May, 1910, the defendant was engaged in erecting a building for use in connection with its condensed milk factory, located at Stanwood, in Snohomish county.  Plaintiff had placed on the flat roof of its engine house a temporary derrick, to be used in raising another and larger derrick or gin-pole for hoisting a smoke-stack on the top of the engine house.  The temporary derrick, or rather the gin-pole thereof, was a stick of timber six by six inches square and about twenty-four feet long. The lower end of this timber or gin-pole rested on the top of the flat roof of the engine house and against some stationary blocks.  Three ropes, called guy lines, were fastened to the top of this gin-pole.  One of these guy lines was carried to the east and fastened to a pile under a warehouse.  Another was carried to the south and fastened to a water tank.

The other line was carried to the westward and fastened to a fence or post. The gin-pole thus stayed did not stand perpendicular. It leaned eastward so that the top of the pole projected over the east wall of the engine house. A pulley was made fast to the upper end of this gin-pole, and a block and tackle were attached thereto, so that material could be drawn up from the ground to the top of the building clear of the east side wall.

The superintendent in charge of the work determined, on the morning named, to lean the pole further over the east side of the building, so as to give more clearance for bulky material which was to be raised. In order to do this, it became necessary to change the guy lines below. Prior to this time the plaintiff was employed by the defendant as a carpenter, at Mount Vernon. He was about twenty years of age, and had been a deep-sea sailor since he was ten years of age. He was a strong, active young man, and accustomed to climbing, but had no experience in the erection of derricks. The superintendent, desiring the defendant's services at Stanwood, requested him to come down from Mount Vernon. This the plaintiff did. He was taken to the roof of the engine house, and directed to climb the gin-pole for the purpose of replacing a rope which had been carried away from one of the pulley blocks at the top of the pole. Before ascending the pole, he inquired if it was safe, and the superintendent informed him that it was; that it had carried a load of materials that morning. The plaintiff thereupon climbed the pole and replaced the rope upon the pulley block. He descended in safety.

The foreman on the work then directed that the gin-pole be tipped further east over the face of the building, as above stated. It became necessary then to release the guy ropes below. The plaintiff was sent to the south line upon the water tank. He released this line and fastened it as directed by the foreman. Other men were sent to the east and west lines, which were rearranged as directed. The fastening

place of the guy line extending to the east was moved further north, so that the line extending east and the one extending westward were nearly directly opposite to each other. The plaintiff was not informed of this change, and did not notice that it had been made. He was then directed to again climb the pole and fasten another guy line to the top of the pole. This line was intended for another and heavier guy line to the westward. One end of this line was fastened around the plaintiff's waist. He climbed the pole and, after fastening the line, asked the superintendent if there was anything more to be done there. He was informed that nothing more was to be done there, and was requested to come down. He started to descend. As he did so, he swung himself to the south side of the pole, which immediately toppled over to the south, off of the building and onto the ground. The plaintiff, in order to escape the fall to the ground, which was about twenty feet below the roof of the building, jumped from the pole and struck his head upon the coping or fire wall of the building. He was also struck by the gin-pole, and severely injured. The negligence claimed was in improperly placing the guy lines.

Appellant argues that the trial court erred in denying the motion for a directed verdict at the close of the plaintiff's evidence, and again at the close of all the evidence, for the reason that the position and arrangement of the guy lines were as obvious to the plaintiff as they were to the defendant's superintendent, and there being no inherent defect, but an obvious one which the plaintiff should have seen and known, that he assumed the risk as a matter of law. Appellant relies upon the case of *Deaton v. Abrams*, 60 Wash. 1, 110 Pac. 615. There is very little similarity between that case and this one. There the plaintiff was neither ignorant nor inexperienced, and he knew that the wood which fell and caused his injury was piled dangerously high. Here the plaintiff, while he was an experienced man in climbing to high places and in tying ropes, was not experienced in the

erection of derricks.   But if we assume that he must have known that a pole which is held by three guy lines, two of which are directly opposite each other, will fall in the direction opposite to which there is no line, we are still of the opinion that the plaintiff was excused from observing that fact in this case.   He had been informed by the superintendent in charge of the work that the pole was safe.   He had once, at the direction of the superintendent, ascended and descended the pole in safety.   Thereafter one of the lines was changed a short distance so as to bring it nearly opposite the other line.   Plaintiff did not know of this change, and was not informed thereof.   It was clearly the duty of the superintendent, at whose direction the change was made, to so inform plaintiff; and in the absence of such information, plaintiff had a right to rely upon the belief that the appliance was in the same condition it previously had been, and upon the statement of the superintendent that it was safe, without stopping to make a further inspection.   We are clear, therefore, that there was no assumption of risk by the plaintiff under the circumstances here shown.

It is next argued that the court erred in permitting evidence to be introduced and considered by the jury to the effect that the plaintiff lost eight months' earnings during his minority, besides hospital and doctor's fees and drug bills.   When this evidence was offered, objection was made upon the ground that the plaintiff was suing by guardian *ad litem*.   This objection was overruled, and the evidence was offered.   Plaintiff then testified that his parents reside in Newfoundland, and that since 1905 he had supported himself and collected his wages, and that the defendant had paid him his wages while in its employ.   There was no allegation of emancipation in the complaint, but the plaintiff had alleged the loss of wages and hospital fees and doctor's fees, etc.   These allegations were not moved against.   They were allowed to remain in the complaint.   We think the defendant was not therefore taken by surprise, either upon the loss of

wages or the emancipation of the plaintiff by his parents, and for that reason the court did not err in allowing the evidence.

It is next argued that the verdict is excessive.   The plaintiff appears to have been a strong, healthy boy, active and well prior to his injury.   The injury was a severe one.   The plaintiff was rendered unconscious for four days.   Blood gushed from his nose, eyes, ears, and mouth.   The result was facial paralysis on one side.   But this had improved very much at the time of the trial, which was eight months after the accident.   Partial deafness resulted.   This has improved and may disappear.   His health has been poor since the accident, and he has been able to do only light work.   The injury was a frightful one.   That death did not result is as surprising as the recovery which he has made.   But it is apparent that he has lost his strength, and that the effects of his injury will remain through life.   We are satisfied that the verdict is not excessive.

Some criticism is made upon two or three of the court's instructions to the jury.   We think there is no merit in these criticisms, and that it is unnecessary to consider them.   It is sufficient to say that the instructions of the court clearly and correctly cover the law of the case.

The judgment is affirmed.

DUNBAR, C. J., PARKER, FULLERTON, and GOSE, JJ., concur.